**UNITED STATES of America, Appellee,**

v.

**James PEOPLES, Appellant.**

**No. 89–3056.**

United States Court of Appeals, Eighth Circuit.

Submitted Aug. 27, 1990.

Decided Feb. 8, 1991.

Thomas R. Galganski, St. Louis, for appellant.

Steven Holtshouser, Asst. U.S. Atty., St. Louis, for appellee.

Before McMILLIAN, WOLLMAN and BEAM, Circuit Judges.

BEAM, Circuit Judge.

James Peoples appeals his conviction for possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). The district court[1] denied Peoples' motion to suppress and a jury found Peoples guilty on the one count indictment. Peoples asserts that the district court erred in denying his motion to suppress because all evidence presented at trial was obtained during a stop and frisk that violated the fourth amendment. We disagree and affirm.

## I. BACKGROUND

On the evening of June 15, 1989, shortly before midnight, Police Officers Timothy J. Benning and Scott Johnston of the Hazelwood Missouri Police Department responded to an anonymous telephone call. The call reported suspicious persons in dark clothing near a light-colored van in the French Quarter Apartment complex at 7331 Normandy Court. The officers approached the parking area of the apartment complex in separate vehicles and from different directions. Officer Benning arrived on the scene first, approximately

1. Honorable George F. Gunn, Jr., United States District Court Judge for the Eastern District of Missouri.

two minutes after the call. With the lights of his vehicle turned off, Officer Benning followed an unrelated vehicle into the parking area and observed two men, James Peoples and Marcus Skinner, dressed in dark clothing, walking side-by-side down a walkway toward the parking area. Peoples was carrying a brown paper bag. As the vehicle in front of Benning approached the walkway, Peoples and Skinner stepped off the walkway into the shadows. After the vehicle passed, Peoples and Skinner returned to the walkway. Skinner then took the bag from Peoples, looked inside it, and both resumed walking toward the parking area. Trial Transcript vol. 1, at 33, 37–43.

At this point, Officer Benning exited his vehicle, drew his gun, and approached Peoples and Skinner. Shining his flashlight on the pair, Benning identified himself as a police officer. Peoples and Skinner both turned away from Benning; Peoples took a few steps toward Officer Johnston, who had not yet made his presence known, and Skinner began walking toward a light-colored van parked in the parking area. As Skinner turned, he tucked the bag behind his leg out of view from Officer Benning. *Id.* vol. 1, at 44–45; vol. 2, at 56. Officer Johnston, standing next to his vehicle, shined the vehicle's spotlight on the entire area and Skinner immediately began "an extremely hurried walk" toward the van. *Id.* vol. 2, at 57. Both officers *then* ordered Peoples and Skinner to stop. *Id.* vol. 1, at 44–46; vol. 2, at 57. Despite two additional commands to stop by Officer Benning, Skinner continued to approach the van at a hurried pace. When Skinner refused to stop after the commands, Officer Johnston also drew his weapon. Upon reaching the van, Skinner reached inside the open driver's door window and dropped the bag inside the van. Skinner then responded to the officers' commands. *Id.* vol. 1, at 46–47; vol. 2, at 57–58. Officer Benning observed a person sitting in the front passenger seat, Marshall Bradley, make a reaching movement toward the rear of the van. Through the side window of the van, Benning observed an additional person, Lovyed Gregory, moving about in the rear of the van. *Id.* vol. 1, at 48–50.

Bradley and Gregory exited the van upon Officer Benning's order, leaving the front passenger door and the side door open. With the aid of his flashlight, Benning looked through the open doors and opened a rear door to ensure that there were no additional occupants in the van. Bradley, Gregory, Peoples and Skinner were then placed against the van in a wall search position and patted down for weapons. No weapons were found and Officer Benning subsequently asked Skinner and Bradley where the bag was located. Skinner and Bradley both denied having any knowledge of a bag. *Id.* vol. 1, at 50–54; vol. 2, at 60–62.

Bradley, Gregory, Peoples and Skinner were ordered to kneel down cross-legged with their hands behind their heads while Officer Johnston searched the van for the bag. Johnston found the bag on the floor of the van behind the rear bench seat in an upright position with the top of the bag partially open. Using his flashlight, Johnston looked inside the bag and saw a white substance encased in plastic. Suspecting that the material inside the bag was a controlled substance, Johnston picked up the bag to inspect it further and discovered that the bag contained twelve individually wrapped plastic packages containing a white powdery substance. All four men were then placed under arrest. *Id.* vol. 1, at 54; vol. 2, at 64–67. Laboratory tests later confirmed that the white powder found in the sack was cocaine. *Id.* vol. 2, at 27.

II. DISCUSSION

Prior to trial, as indicated, Peoples moved to suppress all evidence obtained during the stop by the Hazelwood Police Officers. The district court denied the motion, and Peoples challenges his conviction by asserting that the stop and search violated his fourth amendment rights. Peoples' argument is two-fold. First, Peoples contends that all evidence presented at trial was inadmissible because it was the result of an invalid stop. Peoples asserts that the

Hazelwood Police Officers did not have sufficient facts prior to the seizure to provide the officers with reasonable suspicion that Peoples was engaged in criminal activity. Second, Peoples asserts that all evidence obtained from the search of the van used by Peoples and the other suspects was inadmissible because the Hazelwood Police Officers did not have an articulable reason to believe that Peoples and the other suspects were potentially dangerous. The district court's factual finding that a reasonable suspicion existed to justify the seizure will not be reversed unless the finding is clearly erroneous. *United States v. Jefferson*, 906 F.2d 346, 348 (8th Cir.1990); *United States v. Martin*, 706 F.2d 263, 265 (8th Cir.1983); *United States v. McGlynn*, 671 F.2d 1140, 1143 (8th Cir.1982).

## A. Seizure of Suspects

 The fourth amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. It is well settled, however, that a limited investigative stop of a person by a law enforcement officer, without a warrant, is reasonable under the fourth amendment in limited circumstances. Such a stop is permitted when a law enforcement officer is "able to point to specific and articulable facts which, taken with rational inferences from those facts," lead the officer reasonably to suspect that the person is, or is about to be, engaged in a crime. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1879–80, 20 L.Ed.2d 889 (1968). *See also United States v. Williams*, 714 F.2d 777, 779 (8th Cir.1983). The requirement of articulable justification announced in *Terry* recognizes and protects the constitutionally guaranteed right of an individual to be free from unreasonable government intrusion. *Terry*, 392 U.S. at 9, 88 S.Ct. at 1873. The seizure must be based on more than an "inchoate and unparticularized suspicion or 'hunch.'" *Id.* at 27, 88 S.Ct. at 1883. Although the stop must be based on particularized facts, the facts need not be susceptible to only an interpretation of guilt. Conduct consistent with both innocence and guilt may nevertheless indicate possible criminal activity. *United States v. Campbell*, 843 F.2d 1089, 1093 (8th Cir. 1988); *United States v. Ilazi*, 730 F.2d 1120, 1125 (8th Cir.1984). To determine whether a seizure was conducted within the parameters of *Terry*, we must determine whether the facts collectively provide a basis for reasonable suspicion, rather than determine whether each fact separately establishes such a basis. "[T]he totality of the circumstances—the whole picture—must be taken into account." *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981).

 After a careful examination of the record in light of the standards set forth, we cannot say that the district court clearly erred in concluding that the Hazelwood Police Officers reasonably had sufficient suspicion to justify an investigative stop. An examination of the facts known to the officers before the seizure occurred, viewed collectively, establishes that the officers had specific and articulable facts which led them reasonably to suspect that Peoples and the other suspects were engaged in criminal activity.

To analyze whether the officers had sufficient objective facts prior to the seizure, we must first establish the point at which the seizure occurred. A seizure occurs when "a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980). *See Terry*, 392 U.S. at 19 n. 16, 88 S.Ct. at 1879 n. 16. We conclude that the seizure of Peoples and the other suspects occurred when the officers ordered Peoples and Skinner to stop. At this moment, there was a clear order for the suspects to submit to the officers. The order was given after Officer Johnston shined his spotlight on the entire area, and both officers began asserting the order from different directions. These actions by the officers amount to a show of authority such that a reasonable person would have believed he

or she was not free to leave.[2]

We thus conclude that the facts known to the officers before this seizure occurred, viewed collectively, establish that the officers had an objective and articulable suspicion that Peoples was engaged in criminal activity. As indicated, the facts known to the officers prior to the seizure include an anonymous telephone call shortly before midnight which reported suspicious persons in dark clothing by a light-colored van in the French Quarter Apartments; two suspects, Peoples and Skinner, who matched the description given in the call, walking side-by-side toward a light-colored van in the area identified by the call and within minutes of the call; Peoples and Skinner stepping into shadows in an attempt to avoid being seen by an approaching car; the exchange of a brown paper bag from Peoples to Skinner and an examination of the bag's contents by Skinner; the suspects' act of immediately turning and walking away from Officer Benning upon his announcement that he was a police officer; an attempt by Skinner to hide the bag from Officer Benning's view; and Skinner's extremely hurried walk toward the van immediately after Officer Johnston illuminated the area with a spotlight. Under these circumstances, it was reasonable for the officers to suspect that Peoples was engaged in a crime. The suspects matched the description given in the anonymous

call, attempted to avoid being seen, exchanged a bag and made every effort possible to prevent police officers from seeing and gaining access to the bag. When viewed collectively, these facts, and the rational inferences to be gained from them, are sufficient to have aroused a reasonable, articulable suspicion that Peoples was engaged in criminal activity.

### B. Search of Vehicle

A search of a vehicle used by a suspect, without a warrant, is permissible under the fourth amendment in limited circumstances. When a police officer effects a valid stop within the parameters of *Terry*, the officer is permitted to search "the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden ... if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant' the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." *Michigan v. Long*, 463 U.S. 1032, 1049, 103 S.Ct. 3469, 3480–81, 77 L.Ed.2d 1201 (1983) (quoting *Terry*, 392 U.S. at 21, 88 S.Ct. at 1879–80). The purpose of the search cannot be the discovery or preservation of drugs, *see Sibron v. New York*, 392 U.S. 40, 64, 88 S.Ct. 1889,

**2.** It is arguable that the seizure occurred when Officer Benning exited his vehicle, drew his weapon and identified himself as a police officer. Although the display of a weapon is indicative of a seizure, *Mendenhall*, 446 U.S. at 554, 100 S.Ct. at 1877, we decline to find a seizure at this point because there is nothing in the record to indicate that a reasonable person would have believed that he was not free to leave after Officer Benning approached the suspects with his drawn weapon. The officer did not order the suspects to stop and, considering the darkness of night and Officer Benning's act of shining his flashlight toward the suspects, the suspects may not have seen the officer's drawn weapon.

It is similarly arguable that the seizure occurred later, after Skinner dropped the bag into the van, stopped walking and obeyed the officers' commands to stop. The suspects were freely moving about up to this point. However, under *Mendenhall*, 446 U.S. at 554, 100 S.Ct. at 1877, the test to determine when a seizure oc-

curs is objective rather than subjective. On the facts of this case, we conclude that a reasonable person would believe that he or she was not free to leave when the officers ordered Peoples and Skinner to stop. The suspects' continued movements, of course, are relevant to the question of probable cause to arrest. *See Kolender v. Lawson*, 461 U.S. 352, 366 n. 4, 103 S.Ct. 1855, 1863 n. 4, 75 L.Ed.2d 903 (1983) (Brennan, J., concurring) ("some reactions by individuals to a properly limited *Terry* encounter, ... such as flight, may often provide the necessary information, in addition to that which the officers already possess, to constitute probable cause"); *Sibron v. New York*, 392 U.S. 40, 66–67, 88 S.Ct. 1889, 1904–05, 20 L.Ed.2d 917 (1968) ("deliberately furtive actions and flight at the approach of strangers or law officers are strong indicia of *mens rea*, and when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime, they are proper factors to be considered in the decision to make an arrest").

1903, 20 L.Ed.2d 917 (1968); *United States v. Williams*, 822 F.2d 1174, 1179 (D.C.Cir. 1987); *United States v. Gonzalez*, 763 F.2d 1127, 1130 n. 1 (10th Cir.1985), but must be based on a reasonable suspicion that a suspect may be dangerous. *Long*, 463 U.S. at 1049–50, 103 S.Ct. at 3480–81. However, if during a valid search under *Terry* and *Long* officers discover drugs instead of a weapon, the officers are not required to ignore the drugs, and the fourth amendment does not require that the drug-related evidence be suppressed. *See id.* at 1050, 103 S.Ct. at 3481; *Williams*, 822 F.2d at 1179.

■ Under these standards, we conclude that the search of the vehicle used by the suspects was properly conducted pursuant to a valid stop. The events that precipitated the seizure, combined with those events that occurred after the seizure, are sufficient to arouse a reasonable suspicion that Peoples and the other suspects were potentially dangerous. Prior to the seizure, the officers had a reasonable suspicion that Peoples and the other suspects were engaged in criminal activity. After the seizure occurred, at least one of the suspects, as noted, refused to stop walking despite the repeated commands of two police officers. This suspect, Skinner, engaged, as earlier indicated, in an extremely hurried and determined walk to the van, and passed the bag inside the van. Officer Benning then observed additional suspects, Bradley and Gregory, moving inside the van. When asked where the bag was, Skinner and Bradley denied any knowledge of the bag. Under these circumstances, it was reasonable for the officers to infer that the bag may contain a weapon and that Peoples and the other suspects were potentially dangerous. In fact, Officer Johnston testified, and the evidence establishes, that Skinner's refusal to stop and hurried walk toward the van caused the officer to draw his gun and experience "fear [for his] own safety." Trial Transcript vol. 2, at 60. The suspects' attempts to conceal the bag may have increased the fear experienced by the officers.

Furthermore, the officers' act of immobilizing the suspects outside the van did not obviate the necessity of the search. Although the suspects were under the control of the officers outside the van, the suspects were not under arrest at that time. Absent an arrest, the suspects would have been free to reenter the van and pose a danger to the officers. *See United States v. Longmire*, 761 F.2d 411, 419 (7th Cir.1985); *Williams*, 822 F.2d at 1179–80 (search of vehicle for bag held valid because officer feared bag contained a weapon). Therefore, we conclude that the search of the van was a valid search under *Terry* and *Long*.

## III. CONCLUSION

We have carefully examined Peoples' arguments and for the reasons discussed we find that they lack merit. We conclude that the district court did not err in finding that the Hazelwood Police Officers had a reasonable suspicion to justify an investigative stop, and that the subsequent search of the suspects' van was within the scope of the stop. The evidence obtained during the search of the van was properly admitted at trial. The conviction of Peoples is affirmed.

McMILLIAN, Circuit Judge, dissenting.

I respectfully dissent. I believe the seizure occurred when Officer Benning, with his weapon drawn, approached Peoples and Skinner and identified himself as a police officer. *See United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980) (display of weapon indicates seizure). At oral argument the government acknowledged that the seizure occurred at that time. It was nowhere suggested in the record that Peoples did not see the weapon. I cannot agree with the majority that there was no seizure until the specific order to stop was given.

When Peoples was thus seized, the facts known to the officers, and any reasonable inferences to be drawn therefrom, were not sufficient to have aroused a reasonable articulable suspicion that "criminal activity may be afoot." *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889

**1088**

(1968). The fact that an anonymous telephone caller thinks someone looks suspicious does not provide the basis for even a limited investigative stop by the police. Here the only additional facts were that Peoples and Skinner stepped into the shadows when a vehicle with its lights on passed by, and that Peoples handed a brown paper bag he was carrying to Skinner who looked inside it. This conduct was insufficient to provide the officers with the necessary reasonable suspicion. The officers did not testify that based on their experience, this conduct indicated criminal drug activity. *See United States v. Ilazi*, 730 F.2d 1120, 1125 (8th Cir.1984).

Accordingly, I would reverse the conviction.