**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Gordon Earl WATTS, Defendant–
Appellant.**

**Nos. 93–1526, 93–1527.**

United States Court of Appeals,
Eighth Circuit.

Submitted Aug. 10, 1993.

Decided Oct. 7, 1993.

Virginia Guadalupe Villa, Minneapolis, MN, argued (Scott F. Tilsen, and Birch P. Burdick, on the brief), for defendant-appellant.

James E. Lackner, Minneapolis, MN, argued (Francis X. Hermann and Paul A. Murphy, on the brief), for plaintiff-appellee.

Before JOHN R. GIBSON, MAGILL and LOKEN, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Gordon Earl Watts appeals from his conviction after trial by jury of one count of selling and possession of a firearm under 18 U.S.C. § 922(g)(1) (1988), and also appeals the sentence imposed upon him on a charge of failure to appear for trial under 18 U.S.C. § 3146(a)(1) (1988). The only issue raised with respect to the firearm charge is whether the police unlawfully obtained the serial numbers of certain firearms. Watts further argues that if he is successful on this claim, we should order resentencing on the failure to appear count because his sentence was based in part on the firearm conviction. We conclude that the district court [1] did not err in denying the motion to suppress the evidence of the serial numbers of the firearms, and accordingly, affirm the firearm charge. This makes it unnecessary for us to consider the arguments with respect to the failure to appear charge, and thus, we affirm Watts' conviction and sentence.

The police stopped Watts and Lesley Eiler as they were driving away from a house at 1615 Third Street NE in a blue van. A neighbor had called the police to report "suspicious persons loading items into a blue van, including long guns." Two squad cars arrived at the house. The first squad car, driven by Officer Sporny, arrived as the van was leaving the house. Sporny pulled the van over, asked the driver, Watts, for identification, and received a valid driver's license.

1. The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

Sporny explained to Watts that he had received a report of property being loaded into a van. Watts replied that he was moving property for a friend, John Schmeck. Officers Yellow Bird and Walrich then arrived in the second squad car, and they talked to the passenger, Eiler. Watts and Eiler gave conflicting answers when asked if any guns were in the van. The officers then asked Watts and Eiler to move to the back of the van. Sporny left them there with the other two officers while he searched under the front passenger seat for "weapons or anything." Sporny found a bag containing bolt cutters and screwdrivers. He then opened the van's side door and saw three closed long gun cases, one partially-opened long gun case with an exposed gun barrel, a guitar case, a 13–inch television, suitcases, and various other items. Sporny pat searched Watts and Eiler and placed them inside a locked police car. Sporny's continued search of the van uncovered ammunition, a fishing license, a social security card, and a grocery bag containing jewelry.

Yellow Bird and Walrich then went to the address of the original call, 1615 Third Street NE. They met John Schmeck, the apparent owner of the house. He informed the officers that Watts and Eiler were moving the property for its owner "Greg." He denied knowing Watts or Eiler. The officers then returned and shared this information with Watts and Eiler, at which time Eiler declared Schmeck a liar. At this point, Sporny and Yellow Bird examined the guns, made sure they were unloaded, and copied their serial numbers. The guns' numbers turned up clear, and the officers released Watts and Eiler. After Watts and Eiler left, Officer Sporny found a driver's license next to the cruiser where Watts had been standing.

Later, Fred Atton reported that on June 30, 1991, the day the police stopped the van driven by Watts, he was away from his apartment, but returned that night and found that his apartment had been ransacked. Four firearms, an Ovation guitar, a JVC VCR, a 13–inch RCA color television, a "boombox," jewelry, clothing, ammunition, and paintings were missing. His fiancee, Charisse Matson, identified the driver's license that Officer Sporny found on the ground next to the police car as hers. Watts was indicted for being a felon[2] in possession of firearms in violation of 18 U.S.C. §§ 922(g)(1) and 924.

Watts filed a motion to suppress evidence obtained from the search of the van. Magistrate Judge Jonathan G. Lebedoff[3] conducted a hearing and filed a report and recommendation that the motion to suppress the evidence, specifically the serial numbers of the weapons, be denied. The district court adopted the magistrate judge's report and recommendation. The case proceeded to trial, and a jury convicted Watts. Watts fled before the trial ended, but was later apprehended by United States Marshalls. He was indicted for failure to appear at trial in violation of 18 U.S.C. § 3146(a)(1), and pleaded guilty to this charge.

On appeal, Watts argues that several aspects of the stop and search of the van were improper. He first argues that Officer Sporny lacked a sufficient basis to stop him. Next, he argues that the officers obtained the serial numbers after any reasonable suspicion supporting the investigative stop had dissipated, as the officers had no reason to believe that the supposed burglary at 1615 Third Street NE had occurred. Third, he contends that the subsequent search of the van exceeded the appropriate scope of a valid investigatory stop. We consider these arguments in turn.

Watts first argues that Officer Sporny's stop of his van violated the Fourth Amendment.[4] At least since *Terry v. Ohio*,

---

2. Watts was on parole supervision following a 25–year sentence for armed robbery.

3. The Honorable Jonathan G. Lebedoff, United States Magistrate Judge for the District of Minnesota.

4. The government contends that Watts did not preserve this issue for appeal. The government argues that Watts failed to object before the district court to the legality of the initial stop and, therefore, is precluded from raising the issue on appeal. *See United States v. White,* 890 F.2d 1033, 1034–35 (8th Cir.1989). Watts did, however, move to suppress the evidence obtained in the search of the van as resulting from an illegal warrantless search, and at trial renewed

392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), officers have been permitted to conduct "investigative stops" when they have "reasonable, articulable suspicion that criminal activity may be afoot." *United States v. Miller,* 974 F.2d 953, 956 (8th Cir.1992); *see Terry,* 392 U.S. at 30, 88 S.Ct. at 1884. The suspicious activity need not conclusively prove guilt. *United States v. Campbell,* 843 F.2d 1089, 1093 (8th Cir.1988). Conduct consistent with both guilt and innocence may suffice. *Id.* Automobiles, as well as people, are subject to *Terry* stops. *See, e.g., United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 694, 66 L.Ed.2d 621 (1981). We will reverse a district court's finding of reasonable suspicion only if it is clearly erroneous. *United States v. Saffeels,* 982 F.2d 1199, 1205 (8th Cir.1992), *petition for cert. filed,* —— U.S. ——, 114 S.Ct. 41, 126 L.Ed.2d 12 (1993). In this case, Officer Sporny received a citizen report describing "suspicious persons loading items into a blue van, including long guns." The district court found that this report provided reasonable articulable suspicion for Officer Sporny to stop the van. This finding was not clearly erroneous. *See United States v. Basey,* 816 F.2d 980, 988–89 (5th Cir.1987) (citizen's identification of "suspicious" car sufficient for *Terry* stop); *United States v. Peoples,* 925 F.2d 1082, 1086–87 (8th Cir.) (anonymous phone call and suspicious conduct sufficient to support *Terry* stop), *cert. denied,* —— U.S. ——, 112 S.Ct. 370, 116 L.Ed.2d 322 (1991).

Watts next argues that the searches of the van, even if incident to a lawful stop, exceeded the permissible limits set by the Fourth Amendment. We consider his argument in three parts: (1) Were Officer Sporny's initial searches of the van lawful? (2) Did the officers' reasonable suspicion dissipate when they determined that no burglary occurred at the reported location? (3) Was the subsequent removal of the long guns from their cases and taking down of their serial numbers outside the permissible scope of a search incident to an investigative stop?

■ We first consider whether Officer Sporny's initial searches of the van were lawful. There is no clear line delineating the boundaries of permissible searches in conjunction with investigative stops. *Saffeels,* 982 F.2d at 1205. Each case turns on its unique facts. Officers may, however, search for weapons and take any additional steps "reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop." *United States v. Hensley,* 469 U.S. 221, 235, 105 S.Ct. 675, 684, 83 L.Ed.2d 604 (1985). Watts argues that the officers' searches exceeded the bounds permitted during an investigative stop. The district court disagreed. We subject the district court's determination of whether a search exceeded the permissible scope of an investigative stop to de novo review. *Saffeels,* 982 F.2d at 1205; *United States v. McKines,* 933 F.2d 1412, 1425–26 (8th Cir.) (en banc), *cert. denied,* —— U.S. ——, 112 S.Ct. 593, 116 L.Ed.2d 617 (1991).

■ Sporny first searched the van's front seat for "weapons or anything," while Watts and Eiler were behind the van with Yellow Bird and Walrich. He found a bag containing bolt cutters and screwdrivers. He then opened the van's side door to obtain a better view of the rear cargo area, where he found a number of items, including three closed long gun cases. After pat searching and placing Watts and Eiler in a locked police car, Officer Sporny further searched the van and found several items including ammunition, identification cards with other people's names, and a grocery bag containing jewelry.

An officer, incident to a valid *Terry* stop, may search "the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden . . . if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant' the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." *Michigan v. Long,* 463 U.S. 1032, 1049, 103 S.Ct. 3469, 3481, 77 L.Ed.2d 1201 (1983) (quoting *Terry,* 392 U.S. at 21, 88 S.Ct. at 1879). Officer Sporny's

all pretrial motions under the Fourth and Fifth Amendments. In light of our decision on the

merits, we may assume without deciding that Watts preserved this issue for appeal.

initial searches fall well within the holding of *Long*. The radio report mentioned "long guns," providing Sporny with a reasonable basis to conclude that the van contained guns. Sporny testified that he could not determine whether someone might be in the back of the van, and thereby have access to any weapons. Moreover, the officers had a reasonable basis to conclude Watts and Eiler may have committed a crime. Thus, we conclude the initial searches were within the permissible scope of a *Terry* stop and search.

Watts concedes the possible legality of these initial searches. Nevertheless, he argues the illegality of the later search, including the taking of the guns' serial numbers. His argument is two-fold. First, he contends that the officers' reasonable suspicion dissipated when Officers Yellow Bird and Walrich returned with information that the house at 1615 Third Street NE had not been burgled. Thus, any subsequent searches of the van were no longer incident to a valid investigatory stop. Alternatively, he argues that even if reasonable suspicion continued, the taking of the serial numbers exceeded the permissible scope of a search accompanying an investigative stop.

■ The Fourth Amendment requires that a search not continue longer than necessary to effectuate the purposes of an investigative stop. *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983). More specifically, an investigative stop must cease once reasonable suspicion or probable cause dissipates. *See United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir.1993) (unlawful for police to execute search after they learn that probable cause no longer exists); *United States v. Babwah*, 972 F.2d 30, 34 (2d Cir.1992) (agents' continued detention of suspect became illegal once their reasonable suspicion proved unfounded).

■ Watts argues that any reasonable suspicion was dispelled when the officers learned that no burglary occurred at 1615 Third Street NE. Although we agree that the officers' reasonable suspicion that Watts and Eiler burgled a particular house may

have dissipated at this point, we believe the officers had reasonable grounds to believe that Watts was in possession of stolen property after seeing the type of items in the van.[5] This, coupled with the report of guns in the van, created a reasonable suspicion that Watts and Eiler were dangerous. *Long*, 463 U.S. at 1049, 103 S.Ct. at 3480.

The record fully supports our conclusion. Watts and Eiler offered conflicting responses when asked if guns were present in the van. Moreover, Watts told the officers he was moving the items for his friend Schmeck, the resident at 1615 Third Street NE. Schmeck told Officers Yellow Bird and Walrich that the items were being moved for their owner "Greg," and that he did not even know Watts or Eiler. The presence of a van full of items commonly associated with a burglary, including weapons and tools, coupled with inconsistent denials of ownership and acquaintanceship, provided grounds for the officers to reasonably conclude that "criminal activity may be afoot." *Terry*, 392 U.S. at 30, 88 S.Ct. at 1884. The mere fact that the officers' original ground for stopping Watts and Eiler dissipated does not prevent them from continuing their investigative stop based on new facts creating a reasonable articulable suspicion of criminal activity.

■ Watts' final argument focuses on the officers' conduct in removing the guns from their cases, examining the guns and recording their serial numbers. He contends this exceeded the permissible scope of a search pursuant to a *Terry* stop. Having determined that the officers' reasonable suspicion had not dissipated, however, we see no legal barrier to the officers returning to the van and examining the guns. *See Long*, 463 U.S. at 1050, 103 S.Ct. at 3481. At the time of the search, the officers still did not know the type or condition of the guns, particularly whether or not the guns were loaded. Moreover, the fact that Watts and Eiler were in the police car did not eliminate the officers' right to search. The Supreme Court stated in *Long* that the officers' legitimate interest in officer safety extends to this context. 463 U.S. at 1052, 103 S.Ct. at 3482. The Court

5. Because we hold that the officers' searches were lawful under *Terry* and *Long*, we need not consider whether or not the facts known to the officers created probable cause.

found the officers' search of the vehicle was justified in part because of a legitimate concern that the suspect "will be permitted to reenter his automobile, and he will then have access to any weapons inside." *Id.* For these reasons, we reject Watts' argument that the officers needed probable cause to open the cases and examine the guns.[6]

We also reject Watts' argument, relying on *Arizona v. Hicks*, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987), that the officers' opening of the gun cases was a "search" requiring probable cause. In *Hicks,* the Court disallowed evidence of serial numbers that were obtained when an officer moved stereo equipment while in an apartment on an unrelated warrantless search. *Id.* at 324–25, 107 S.Ct. at 1152. Our case is readily distinguishable on the ground that Officers Sporny and Yellow Bird were properly in possession of the items containing the serial numbers. Thus, the "plain view" analysis of *Hicks,* which involves the extent to which officers can manipulate items in their presence but not their possession, is inapplicable. *Id.* at 325, 107 S.Ct. at 1152 (stating that the officers' act of moving the stereo equipment was "unrelated to the objectives of the authorized intrusion....").

■ Having obtained lawful possession of the firearms, Officers Sporny and Yellow Bird were free to take down the serial numbers. *See United States v. Wallace*, 889 F.2d 580, 583 (5th Cir.1989) (stating that the police having "legally come into possession of the gun ... were entitled, if not expected, to note and to record its serial number...."), *cert. denied,* 497 U.S. 1006, 110 S.Ct. 3243, 111 L.Ed.2d 753 (1990). Nor do we see any problem with the officers' using these lawfully-obtained numbers in an attempt to confirm or dispel their suspicions of criminal behavior. Police officers have an affirmative duty to utilize the least intrusive methods reasonably available to dispel their suspicions. *Saffeels,* 982 F.2d at 1205. Checking the guns' registration via the police radio provided a relatively quick, effective method of deter-

mining whether the collection of items in the van might be stolen.[7] *See Royer,* 460 U.S. at 500, 103 S.Ct. at 1325.

We conclude the district court did not err in denying the motion to suppress evidence. This makes it unnecessary for us to reach Watts' failure to appear claim.

We affirm the conviction and sentence.

---

6. As discussed earlier, we need not consider the government's claim that the officers had probable cause.

7. Indeed, when the officers' checked the guns' registration and received information that the guns were not stolen, the officers' reasonable suspicion was dispelled and they permitted Watts and Eiler to leave.