# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1540

_____

United States of America,      *
     *
     Plaintiff - Appellant,      *
     *
     v.      *
     *      Appeal from the United States
Michael William Shranklen,      *      District Court for the
     *      Southern District of Iowa.
     Defendant,      *
     *
John Wayne Fleming,      *
     *
     Defendant - Appellee.      *

_____

Submitted: October 8, 2002

Filed: January 10, 2003

_____

Before BOWMAN, RICHARD S. ARNOLD, and LOKEN, Circuit Judges.

_____

BOWMAN, Circuit Judge.

The government appeals the District Court's suppression of the contents of a black pouch found during the search of a vehicle that had been lawfully pulled over for an investigative stop. The vehicle's passenger, John Wayne Fleming, got out of the car upon a police officer's request and asked the officer if he could retrieve a black pouch located underneath the front passenger seat. The officer eventually

agreed to retrieve the pouch on the condition that the officer would search the pouch to ensure it did not contain weapons. Upon opening the pouch, the officer discovered syringes filled with illegal drugs. Finding the search of the pouch to be reasonable to protect the officer's safety, we reverse the suppression order.

I.

This case concerns a traffic stop in Altoona, Iowa, in the early morning hours of October 13, 2001. Defendant Fleming was the passenger in a car driven by co-defendant Michael Shranklen. At 1:40 a.m., Altoona police officer Mark Harmon validly pulled the car over and placed Shranklen in the backseat of Harmon's patrol car while he issued a citation to Shranklen for driving with a suspended license.[1] Harmon then returned to the car and approached Fleming, who sat in the front passenger's seat.

Harmon asked Fleming to exit the car and to walk to the car's rear. As Fleming got out of the car, he carried a flashlight. Concerned that Fleming could use the flashlight as a weapon, Harmon asked Fleming to hand it over to him. Fleming complied. At that moment, Harmon looked over his shoulder and saw that another Altoona policeman, Officer Tinker, had arrived on the scene. Harmon then turned back to Fleming, who said that he needed to return to the car to get a black pouch that was underneath the front passenger seat.

Harmon initially refused to allow Fleming to retrieve the pouch, explaining that it could contain a weapon. Harmon brought Fleming to his patrol car and, with Fleming's consent, patted Fleming down for weapons and placed him in the patrol car.

---

[1]The parties dispute whether Shranklen was under arrest or had merely been issued a citation. Because we decide this case without considering whether or not there was a valid search incident to arrest, we do not reach the question of whether Shranklen was under arrest as a matter of law.

Harmon then offered to get the black pouch, although Harmon explained that he and Officer Tinker would first search the pouch for weapons. Harmon retrieved the pouch, opened it, and found new and used syringes containing illegal drugs. There is no indication in the record that, at the time of the incident, Fleming objected to Harmon's search of the pouch.

Upon Fleming's motion, the District Court suppressed the evidence from the search of the pouch. The government appeals the suppression order, and we reverse.

II.

We review de novo a district court's determination of whether a search exceeded the permissible scope of an investigative stop. United States v. Watts, 7 F.3d 122, 125 (8th Cir. 1993), cert. denied, 510 U.S. 1078 (1994).

The government presented to the District Court, and repeats to this Court, two primary arguments explaining why the search of the black pouch was reasonable under the Fourth Amendment. First, the government contends that the pouch was subject to a valid inventory search. See South Dakota v. Opperman, 428 U.S. 364, 376 (1976). Second, because Shranklen was under arrest for driving on a suspended license, the government argues that the search of the vehicle and its contents was a valid search incident to arrest. See New York v. Belton, 453 U.S. 454, 460 (1981). The District Court dismissed the first argument because it believed the pouch was not part of the inventory search given that it was removed from the car before that search took place. Hearing Tr. at 67-68. The District Court dismissed the second argument because the black pouch belonged to Fleming, who had not been arrested.[2] Id. at 68.

_____

[2]In making this second ruling, the District Court created an exception, apparently for property belonging to a passenger who has not been arrested, to the rule that the contents of a vehicle, including closed containers in the vehicle, may be searched incident to an arrest. See State v. Parker, 987 P.2d 73, 80 (Wash. 1999)

-3-

It is undisputed that the specific reason for the search of the pouch was that Officer Harmon feared that the pouch contained a weapon that Fleming might use against Harmon and his partner. Although officer safety is one rationale that underlies both inventory searches and searches incident to arrest, the search of the pouch can be upheld without the bright-line rules set forth in Opperman and Belton. At any investigative stop—whether there is an arrest, an inventory search, neither, or both—officers may take steps reasonably necessary to protect their personal safety. See United States v. Winters, 221 F.3d 1039, 1041–42 (8th Cir. 2000). We therefore conclude that the search of the pouch was reasonable under the principles of officer safety outlined in Terry v. Ohio, 392 U.S. 1 (1968), and extended to investigative stops of vehicles under Michigan v. Long, 463 U.S. 1032 (1983).

In Terry, the Supreme Court held that an officer may conduct a protective search for weapons, even without probable cause for arrest, where the officer has an articulable suspicion that an individual is armed and dangerous. 392 U.S. at 24. Although Terry involved the pat-down search of an individual and not the search of a vehicle, the case cannot be read to limit protective searches to the suspect's person. Long, 463 U.S. at 1047. Rather, in order to protect police and others, protective searches can be justified in any case "when police have a reasonable belief that the suspect poses a danger." Id. at 1049.

Noting that roadside stops, such as the one in this case, can be especially hazardous, the Supreme Court held in Long that

> the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible

---

(holding that such an exception exists under the Washington Constitution). We do not adopt this holding, and we do not reach the issue at all as we decide the case on other grounds.

if the police officer possesses a reasonable belief . . . that the suspect is dangerous and the suspect may gain immediate control of weapons.

Id. The officer's reasonable belief must be based on "specific and articulable facts" that are "taken together with rational inferences from those facts." Terry, 392 U.S. at 21, quoted in Long, 463 U.S. at 1039. In some cases, we have easily upheld searches under Long because the officers had actual knowledge that the suspects whose vehicles were to be searched were armed and dangerous. See, e.g., United States v. Gleason, 25 F.3d 605, 608 (8th Cir.), cert. denied, 513 U.S. 911 (1994); United States v. Lego, 855 F.2d 542, 545–46 (8th Cir. 1988). The reasonableness of a search for weapons at an investigative stop, however, does not turn on actual knowledge. The decisive inquiry considers the "specific and articulable facts" and the inferences that arise from those facts.

In examining the relevant facts and inferences, we must keep in mind that "minimally intrusive weapons searches" at traffic stops will more likely be reasonable because of the "inherent danger" of traffic stops. United States v. Menard, 95 F.3d 9, 11 (8th Cir. 1996). In addition, one's expectation of privacy is diminished in an automobile as compared to in one's home. Opperman, 428 U.S. at 367.

Two of our previous applications of Long demonstrate these principles. In Watts, officers, tipped off to suspicious activity, stopped a van with a driver and a passenger. Upon one officer's request, the two men got out of the van and walked to the van's rear. An officer looked into the van and saw three closed gun cases and one partially-open gun case with an exposed gun barrel. The officers then placed the two suspects in the backseat of their patrol car, conducted a search of the van, and discovered that the gun cases indeed contained guns. We found the search to be reasonable under the Fourth Amendment because one of the suspects—before he was arrested—might have been permitted to return to his vehicle, where he would have had access to the weapons inside. 7 F.3d at 126–27 (citing Long, 463 U.S. at 1052).

In United States v. Peoples, 925 F.2d 1082 (8th Cir.), cert. denied, 502 U.S. 938 (1991), police officers approached two men, one of whom was holding a bag. The men walked in different directions away from the officers; the man holding the bag walked hurriedly toward a van in which the officers saw two additional men. The man with the bag then dropped the bag into the van and followed an officer's command to stop. The officers successfully ordered the two additional men to exit the van and placed all four men against the van to conduct pat-down searches. Two of the men denied any knowledge of a bag. The officers then ordered the men to kneel down with their hands behind their heads. The men complied, and the officers searched the van for weapons and found the bag, which contained cocaine. We held that the vehicular search was reasonable because the suspects walked hurriedly, matched a description from an anonymous caller of suspicious activity, attempted to conceal the bag, and denied knowledge of the bag. Id. at 1087. The search was reasonable even though the suspects were kneeling with their hands behind their heads; the suspects were not yet under arrest, so they could have reentered the van and posed a danger to the officers. Id.

Watts and Peoples illustrate that a search for weapons at an investigative stop can be reasonable even where suspects lack immediate access to weapons. Rather, it is enough that the suspects might be able to access the weapons stored in their vehicle. And it can be an important factor that the suspects, like those in Peoples, attempt to conceal a container so that the officers cannot examine it. With these precedents in mind, and with the principle of officer safety as our touchstone, we disagree with the District Court's conclusion that "[t]here was . . . no reason to believe that criminal mischief was afoot, other than that Shranklen had driven while his license was under suspension." Hearing Tr. at 69.

The crucial fact that gave rise to Harmon's concern for his safety was Fleming's request for the black pouch, which was located underneath the passenger's seat. Fleming indicated specific interest in the pouch, yet he offered no explanation as to

why he needed it, nor did he explain why it was underneath the passenger's seat rather than in a spot where it would have been more easily visible. That the pouch was underneath the seat suggests that Fleming was trying to conceal it. Moreover, the pouch was large enough to contain a knife or gun. We find that it was reasonable for Harmon to search the pouch given that it could have held a weapon, that Fleming specifically asked for the pouch, and that the pouch was hidden in the car.

The circumstances surrounding the stop and the inferences that arose subsequently buttress our finding of reasonableness. First, the incident occurred at 1:40 a.m. Second, it took place on the side of a quiet road. Third, the record indicates that only traffic lights brightened the road. Fourth, neither Shranklen nor Fleming could prove ownership of the vehicle in which they were riding, and Shranklen was driving on a suspended license and Fleming carried a suspended license; from these facts, Harmon could infer that Shranklen and Fleming might have stolen the car and, therefore, might have weapons in the car that they used during the theft or had available in case they were discovered and sought to escape. In addition, Fleming held a flashlight, which could be used as a weapon, when he got out of the car. And although Shranklen was sitting in the patrol car and Fleming was outside the vehicle in which the black pouch was located, neither defendant was handcuffed or otherwise restrained. Either or both could have attempted to return to the vehicle and grab a weapon. This was our concern in Watts and Peoples and the Supreme Court's concern in Long.

III.

In finding the search of the pouch to be reasonable, we wish to address three potentially confusing distinctions. First, we emphasize that the location of the pouch in relation to Fleming at any particular time has little impact on the constitutionality of the search. No matter whether the pouch was on Fleming's person, in the car, or neither, the relevant principle—embodied in Terry and Long—is that an officer does

not violate the Fourth Amendment by conducting a search to protect the safety of himself or others so long as the officer has reasonable suspicion that the suspect poses a danger. In this case, Harmon's concern for his safety arose when Fleming asked for the concealed pouch. At that moment, the pouch was inside the vehicle, so <u>Long</u> governs. The situation did not become less dangerous, and the need to protect the officers did not become less important, when Harmon removed the pouch from the car. On the contrary, the pouch might have contained a weapon, and Fleming could have forced it from Harmon's grip. Opening the pouch outside the car does not make the search less reasonable.

Second, it does not matter that the search was of a closed container; a valid <u>Long</u> search extends to closed containers, such as the pouch, that are found within the vehicle's passenger compartment. Because the heart of <u>Terry</u> and <u>Long</u> is the safety of officers (and others), an officer may search a container found in a vehicle when that container might hold a weapon. We note in this regard the similarity here to <u>Watts</u>, where officers discovered gun cases in a van and proceeded to open them, finding weapons. The entire search in <u>Watts</u> was held to be reasonable because of the concern for protecting the officers from the dangers posed by the reasonably suspected presence of weapons.

Third, Harmon was not constitutionally required to pat down the pouch instead of opening it. Fourth Amendment reasonableness involves balancing the legitimate need to search with the privacy interest that is invaded. <u>Camara v. Mun. Court</u>, 387 U.S. 523, 536–37 (1967). An individual has great interest in the privacy of his person: "Even a limited search of the outer clothing for weapons constitutes a severe, though brief, intrusion upon cherished personal security, and it must surely be an annoying, frightening, and perhaps humiliating experience." <u>Terry</u>, 392 U.S. at 24–25. This explains why a pat-down is appropriate rather than a "full" search. <u>Id.</u> at 26. But a person's privacy interest in an item such as a pouch, while protected by the Fourth Amendment, <u>cf.</u> <u>United States v. Gwinn</u>, 191 F.3d 874, 878 (8th Cir.

1999), is not sacrosanct during an investigative traffic stop and must be balanced against the inherent risk of danger to officers at such stops. Long, 463 U.S. at 1048. Given the facts of this case, Fleming's privacy interest in the pouch did not rise to the level that would require a pat-down search of the pouch. Had the black pouch contained a weapon, there is no guarantee that merely feeling the pouch would have led Harmon to discover the weapon. For example, some type of padding could have enveloped the weapon, or the weapon could have been a pocketknife with an unexposed blade. It was therefore reasonable for Harmon to open the pouch in order to inspect for weapons with his sense of sight and not solely with his sense of touch. We also note the resemblance here to Long, where police officers searched a car for weapons and found a pouch. Upon looking inside the pouch, the officers discovered it contained marijuana; the Supreme Court gave no indication that the officers should have patted down the pouch first.

## IV.

Under Long, if a valid search for weapons during a proper investigative stop of a vehicle results in the discovery of drugs rather than weapons, the officers need not ignore the drugs, and the Fourth Amendment does not require their suppression. See Peoples, 925 F.2d at 1087. Having concluded that the search of the pouch was a reasonable search for weapons under Long, we reverse the District Court's order suppressing the contents of the pouch.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-9-