# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2056

_____

| | | |
|---|---|---|
| United States, | * | |
| | * | |
| Plaintiff – Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Thomas Daniel Stachowiak, | * | |
| | * | |
| Defendant – Appellant. | * | |

_____

Submitted: January 15, 2008
Filed: April 3, 2008

_____

Before BYE, BEAM and GRUENDER, Circuit Judges.

_____

BYE, Circuit Judge.

Thomas Daniel Stachowiak appeals his conviction for possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841 (b)(1)(B). A limited protective search of his vehicle during a traffic stop led to a police officer's discovery and seizure of methamphetamine and a scale. Stachowiak contends the search of his vehicle was unconstitutional and appeals the district court's[1] denial of his motion to suppress all evidence discovered subsequent to the initial

_____

[1]The Honorable James Rosenbaum, Chief United States District Judge for the District of Minnesota, adopting the Report and Recommendation of the Honorable Janie S. Mayeron, United States Magistrate Judge for the District of Minnesota.

search.  Based on the totality of the circumstances, we conclude the police officer had reasonable suspicion to believe the appellant was presently armed and dangerous and the protective search of him was justified.  We affirm.

I

On December 15, 2003, a reliable confidential informant (CI) informed the St. Paul Police Department as to Stachowiak selling more than one and a half pounds of crystal methamphetamine each day.  The CI stated he had been engaged in the illegal sale of narcotics from his residence and other prearranged locations since June 2003.  The CI stated he regularly carried firearms and had personally observed him with a firearm in November 2003, while he was in the appellant's residence.  The CI provided a physical description of Stachowiak, described his car as a bluish-green Dodge Intrepid, and identified his residence.

Another member of the police force relayed this information regarding Stachowiak to Officer Mark Nelson, a St. Paul patrol officer.  On December 30, 2003, Officer Nelson parked his marked squad car approximately two blocks away from appellant's residence.  This officer observed him exit his residence and drive away in a green Dodge Intrepid and followed him.

The officer observed Stachowiak violate Minnesota Statute Section 169.19, subd. 5, by failing to signal a hundred feet prior to his turn into a Burger King parking lot where the officer conducted a traffic stop.  The officer's decision to make the stop was based on the illegal turn, the appellant's "erratic" driving behavior,[2] and the officer's belief he might be in possession of illegal drugs.  Law enforcement backup was requested based on a concern Stachowiak might be carrying a firearm.  The

---

[2] Officer Nelson testified he found Stachowiak's driving behavior to be erratic because he immediately changed lanes when the officer pulled in behind him.

appellant exited his vehicle, and the police officer motioned for him to return. He complied and sat in his vehicle with the driver's door open. The officer next observed him lean forward and reach under the front seat as if he were either concealing or retrieving something.

Officer Nelson believed Stachowiak was hiding something as he exhibited signs of extreme nervousness, e.g., his hands were shaking as he handed over his driver's license. The officer instructed him to step out of the car for the purpose of conducting a limited pat down and to view the driver's side seat for possible weapons. Stachowiak refused. The officer retrieved an aerosol restraint and advised he would spray the appellant if he did not comply. He did get out of the vehicle, but then immediately attempted to pull away from the police officer. With the assistance of a backup officer, Stachowiak was brought to the ground and handcuffed. The officers frisked him for weapons and placed him in the back of a squad car. Because Officer Nelson was planning to release Stachowiak after issuing him a traffic citation, Officer Nelson conducted a protective search of Stachowiak's vehicle, to ensure Stachowiak would not have immediate access to a weapon when he returned to his vehicle. The officer discovered a plastic tupperware container under the driver's seat, where the appellant was earlier observed reaching. Inside the container, the officer found several bags of methamphetamine and a scale. Thereupon, he placed Stachowiak under arrest.

Based on the evidence found in Stachowiak's vehicle, the St. Paul police force obtained and executed a search warrant at his residence. There they seized large quantities of narcotics and cash and later obtained a confession. Stachowiak moved to suppress all of the evidence, contending it was the fruit of an illegal search of his vehicle during a traffic stop.

Upon conducting an evidentiary hearing, the magistrate judge filed a report finding the officer retained the requisite suspicion to conduct a protective search and,

additionally, had probable cause to search Stachowiak's vehicle under the automobile exception to the warrant requirement. The district court adopted the magistrate judge's report and recommendation and denied Stachowiak's motion to suppress. He thereafter plead guilty to one count of possession with intent to distribute approximately 213 grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), while reserving his right to appeal all pretrial matters. He was sentenced to 124 months in prison.

II

In considering an appeal from the denial of a motion to suppress, we review the district court's factual findings for clear error and its legal determinations de novo. United States v. Wells, 223 F.3d 835, 838 (8th Cir. 2000). We are required to affirm the district court's denial of a motion to suppress "unless it is unsupported by substantial evidence, based on an erroneous interpretation of the law, or, based on the entire record, it is clear that a mistake was made." United States v. Gladney, 48 F.3d 309, 312 (8th Cir. 1995) (quotation omitted).

A stop of a motor vehicle is a seizure under the Fourth Amendment. Delaware v. Prouse, 440 U.S. 648, 653 (1979). As such, an officer must have "at least articulable and reasonable suspicion" of illegal activity to stop a motor vehicle. Id. at 663. It is well established a minor traffic violation provides probable cause for a traffic stop, even if it is mere pretext for a narcotics search. United States v. Williams, 429 F.3d 767, 771 (8th Cir. 2005). Stachowiak concedes he made an illegal turn, which objectively justified the stop. See Whren v. United States, 517 U.S. 806, 813 (1996); United States v. Thomas, 93 F.3d 479, 485 (8th Cir. 1996) ("[S]o long as police have probable cause to believe that a traffic violation has occurred, the stop is valid even if the police would have ignored the traffic violation but for their suspicion that greater crimes are afoot.")

In Terry v. Ohio, 392 U.S. 1 (1968), the Supreme Court first considered the constitutional limitations on the power of police officers to "stop and frisk" suspicious persons. The Court held a protective search for weapons is constitutional, even in the absence of traditional fourth amendment probable cause, "where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous." Id. at 30. The Supreme Court later recognized "investigative detentions involving suspects in vehicles are especially fraught with dangers to police officers" and extended the principle of the Terry frisk to the passenger compartment of a vehicle, "limited to those areas in which a weapon may be placed or hidden." Michigan v. Long, 463 U.S. 1032, 1047-49 (1983).

"At any investigative stop – whether there is an arrest, an inventory search, neither, or both – officers may take steps reasonably necessary to protect their personal safety." United States v. Shranklen, 315 F.3d 959, 961 (8th Cir. 2003). In a case such as this – where an officer has temporarily removed a suspect from his vehicle, but is not planning to arrest him – the officer is permitted to conduct a limited protective search of the vehicle before releasing a suspect to ensure he will not be able to gain immediate control of a weapon. See id. (holding, under the principles of officer safety outlined in Terry v. Ohio, 392 U.S. 1 (1968), it was reasonable for an officer to search a pouch, which was hidden under the seat of defendant's car and might have contained a weapon); United States v. Peoples, 925 F.2d 1082, 1087 (8th Cir.) (concluding "the officers' act of immobilizing the suspects outside the van did not obviate the necessity of the search" where the suspects were not under arrest and "would have been free to reenter the van and pose a danger to the officers.") (citations omitted), cert. denied, 502 U.S. 938 (1991). If, while conducting a valid search under Terry and Long, officers discover drugs instead of a weapon, the fourth amendment does not require the drug-related evidence to be suppressed. Peoples, 925 F.2d at 1087 (citing Long, 463 U.S. at 1050).

-5-

Stachowiak argues Officer Nelson did not have reasonable, articulable suspicion to believe he was armed and dangerous and thus had no authority to conduct a protective search of his vehicle for weapons. The critical inquiry is "whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." United States v. Roggeman, 279 F.3d 573, 578 (8th Cir. 2002). In this case, the officer had information from a reliable CI about Stachowiak regularly carrying firearms. He had observed the appellant's driving behavior, which the officer believed indicated Stachowiak was trying to "dodge" him. He then observed the nervous behavior and the furtive gesture under the seat.

Stachowiak concedes the furtive gesture might arouse some suspicion, but argues it is the single piece of support the government has for its position, and is insufficient to meet the reasonable, articulable suspicion standard. Stachowiak argues: the information from the CI was stale and could no longer be relied upon; a reasonable person would not find switching lanes and signaling a turn at twenty feet, instead of a full one hundred feet, erratic driving; and there is nothing suspicious about nervous behavior when being stopped and questioned by a police officer.

To determine whether a seizure was conducted within the parameters of Terry, we must determine whether the facts *collectively* provide a basis for reasonable suspicion, rather than determine whether each fact separately establishes such a basis. Peoples, 925 F.2d at 1085 (citing United States v. Cortez, 449 U.S. 411, 417 (1981)). While the officer's subjective perceptions of the driver's nervous behavior or evasive driving standing alone may not be sufficient to constitute a reasonable, articulable suspicion, when taken with the other factors, they contribute to the suspicion. See United States v. Juvenile TK, 134 F.3d 899, 903 (8th Cir. 1998) (stating "police are entitled to be suspicious of vehicular movement that, while not illegal, may be reasonably perceived as evasive"); United States v. Bloomfield, 40 F.3d 910, 918-19 (8th Cir. 1994) (explaining nervousness and other subjective perceptions are valid factors supporting reasonable suspicion).

First, we reject the contention the information Stachowiak sells drugs and regularly carries firearms was stale. There is no bright-line test for determining when information is stale. United States v. Koelling, 992 F.2d 817, 822 (8th Cir. 1993). Simply counting the numbers of days between the occurrence of the facts supplied and the issuance of the affidavit is not sufficient. Id. (citing United States v. McCall, 740 F.2d 1331, 1336 (4th Cir. 1994)). Time factors must be examined in the context of a specific case and the nature of the crime under investigation. Id. In this case, the police department received the relevant information two weeks prior to Stachowiak's arrest from a CI who had personally seen Stachowiak with a firearm within the last month. See United States v. Hartje, 251 F.3d 771, 775 (8th Cir. 2001) (holding a drug transaction one month prior to the warrant application was not stale information in light of the ongoing nature of the crime). Given the ongoing nature of Stachowiak's armed drug trafficking, having occurred regularly for at least six months, the two-week period between the traffic stop and the police department's receipt of the firearm information did not render the information stale.

Second, we find the knowledge Stachowiak was likely to be armed, coupled with the observation of his furtive gesture, was more than sufficient to lead a reasonable officer to believe his safety could be in danger. We also note he refused to cooperate with the officers and had to be forceably removed from his vehicle and handcuffed. See Peoples, 925 F.2d at 1087 (finding suspect's refusal to comply with officers' instructions contributed to a reasonable suspicion suspects were engaged in criminal activity and were potentially dangerous). Considering the totality of the circumstances, we hold the police officer had reasonable suspicion to believe Stachowiak was presently armed and dangerous and therefore determine his protective search was justified.

## III

Additionally, the appellant challenges the district court's finding the police officer had probable cause to search his vehicle under the automobile exception to the warrant requirement. Because we conclude the search was a proper limited protective search under <u>Terry</u>, we decline to address this argument.

## IV

After a careful examination of the record in light of the standards set forth, we cannot say the district court clearly erred in finding Officer Nelson had reasonable, articulable suspicion to conduct a limited protective search. The evidence obtained during the search of Stachowiak's vehicle was admissible. The conviction is affirmed.

_____