965 A.2d 877

**Ernest James McDOWELL**

v.

**STATE of Maryland.**

**No. 66, Sept. Term, 2008.**

Court of Appeals of Maryland.

Feb. 19, 2009.

328

Celia Anderson Davis, Asst. Public Defender (Nancy S. Forster, Public Defender), on brief, for Petitioner.

Jeremy M. McCoy, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen.), on brief, for Respondent.

Argued before BELL, C.J., HARRELL, GREENE, MURPHY, JOHN C. ELDRIDGE, (Retired, Specially Assigned) and ALAN M. WILNER, (Retired, Specially Assigned), JJ.

WILNER, J.

The issues before us are (1) whether the record adequately demonstrates that State Trooper Jeremiah Gussoni, after making a valid traffic stop of a pickup truck in which petitioner was a passenger, had a reasonable suspicion that a gym bag he observed just behind the passenger seat of the truck might contain a weapon, and (2) if so, whether the trooper was justified in ordering petitioner first to exit the vehicle with the bag and then to open the bag so that Gussoni could view its contents, without articulating any basis for believing that a simple pat-down of the bag would fail to confirm or negate his suspicion. We shall answer the first question in the affirmative and the second in the negative.

## BACKGROUND

Just before midnight on December 20, 2005, Trooper Gussoni stopped a pickup truck traveling southbound on U.S. Route 301 in Queen Anne's County, after observing it weaving erratically from lane to lane. The truck was being driven by Hugh Hines; it was owned by petitioner, Ernest McDowell, who was in the passenger seat but had no identification. Hines said that he was coming home from New York City and was tired. Both men appeared to be nervous. McDowell was staring straight ahead and would not look at the officer; according to Gussoni, he "appeared to be out of it."

Gussoni returned to his police car to check the status of Hines's driver's license and the vehicle registration and run a warrant check on both men. In the course of doing so, he observed McDowell bending down and twisting his body several times. Concerned that McDowell may be retrieving a weapon, Gussoni called for backup, which he learned would take about 20 minutes to arrive. Deciding not to wait, Gussoni approached the passenger side of the truck, stood just behind the side window, and saw McDowell reaching underneath his seat and then behind the seat into a gym bag. He described the bag as "a standard gym bag, two and a half feet by a foot and a half," large enough in his opinion to hold a weapon. The bag itself was not placed in evidence, and there was no other description of it. Gussoni knocked on the window and asked McDowell what he was reaching for, to which McDowell replied that he was looking for cigarettes. Gussoni asked whether there were any cigarettes in the bag, and McDowell replied "no."

His suspicion heightened, Gussoni ordered McDowell to get out of the car and bring the bag with him. According to Gussoni, when they got to the rear of the car, he asked for and received permission to search the bag for weapons, but, perhaps because Gussoni made clear that he intended to search the bag whether McDowell consented or not and he immediately directed McDowell to open the bag rather than opening it himself, the court made no finding of consent, and the State

does not argue consent in this appeal. When McDowell opened the bag, Gussoni saw inside it some prescription bottles, clothing, syringes, and a plastic bag containing a white powdery substance. Believing that the bag contained cocaine or heroin, Gussoni took possession of it and, when the backup arrived, he arrested McDowell. A further search of the gym bag conducted at the police station revealed knotted plastic bags containing 55.5 grams of heroin.

McDowell was charged in the Circuit Court for Queen Anne's County with a variety of drug-related offenses, and he moved to suppress the incriminating evidence. After a hearing, at which the facts recited above were elicited, the court concluded that the search of the gym bag was permissible and therefore denied the motion. On an agreed statement of facts, McDowell was convicted of importing a controlled dangerous substance into the State and was sentenced to 20 years in prison. The Court of Special Appeals affirmed, *McDowell v. State*, 179 Md.App. 666, 947 A.2d 582 (2008), and we granted *certiorari.*

## DISCUSSION

### *Terry v. Ohio* and *Michigan v. Long*

The issues, as articulated by McDowell, are based solely on the Fourth Amendment to the U.S. Constitution and derive principally from two Supreme Court cases—*Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). Because encounters between the police and persons whom they suspect may be both armed and engaging in unlawful activity have become so frequent, those cases, like other High Court landmarks dealing with police investigative procedures, have spawned their own jurisprudence. It is important, however, occasionally to go back to the font and take account of the basic governing principles.

In *Terry*, the Court first recognized a limited right of a police officer to stop (seize) and frisk (search) a person for weapons upon a suspicion less compelling than probable cause.

In doing so, the Court began by observing that the Fourth Amendment does not ban all warrantless searches and seizures, but only those that are "unreasonable," and that the determination of what is reasonable or unreasonable involves "balancing the need to search (or seize) against the invasion which the search (or seizure) entails." *Id.* at 21, 88 S.Ct. at 1879, 20 L.Ed.2d at 905, quoting from *Camara v. Municipal Court*, 387 U.S. 523, 536–37, 87 S.Ct. 1727, 1735, 18 L.Ed.2d 930, 940 (1967). *See also Florida v. Jimeno*, 500 U.S. 248, 250, 111 S.Ct. 1801, 1805, 114 L.Ed.2d 297, 302 (1991). The precise issues in *Terry* were whether a search or seizure based on anything less than probable cause could be regarded as reasonable under the Fourth Amendment, and, if so, what alternative standard would suffice.

In focusing on the required balance, the Court looked both to the general substantive nature of the government's interest in conducting the search and to how that interest must be demonstrated in a particular case. In its broadest aspect, the government's interest is in effective crime prevention and detection. Beyond that is the officer's more immediate interest "in taking steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him," for "it would be unreasonable to require police officers take unnecessary risks in the performance of their duties." *Terry*, 392 U.S. at 23, 88 S.Ct. at 1881, 20 L.Ed.2d at 907. Thus, the Court confirmed the need for law enforcement officers to protect themselves and concluded that:

> "When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or others, it would appear unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm."

*Id.* at 24, 88 S.Ct. at 1881, 20 L.Ed.2d at 908.

■ Because that right must be balanced against the individual's right to be free from unreasonable restraint, the

Court made clear that the former right is not unlimited, and that the manner in which the seizure and search were conducted is "as vital a part of the inquiry as whether they were warranted at all." *Id.* at 28, 88 S.Ct. at 1883, 20 L.Ed.2d at 910. Thus, the seizure or search must be "reasonably related in scope to the justification for [its] initiation." *Id.* at 29, 88 S.Ct. at 1884, 20 L.Ed.2d at 910. Because the justification for the search is solely protection of the officer or others and not by any need to prevent the disappearance or destruction of evidence, "it must be confined in scope to an intrusion reasonably designed to discover guns, knives, or other hidden instruments for the assault of the police officer." *Id.* In *Terry*, the officer merely patted down the outer clothing of the suspect and did not place his hands under that clothing until he had felt for and discovered weapons. He thus confined his search to "what was minimally necessary" to learn whether the suspects were armed and "did not conduct a general exploratory search for whatever evidence of criminal activity he might find." *Id.* at 30, 88 S.Ct. at 1884, 20 L.Ed.2d at 911.

■ That all went to describe in general what a police officer may do. In justifying the need for the *particular* intrusion, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion" and, in assessing whether the officer has done so, the facts must be judged against an objective standard, *i.e.,* whether "the facts available to the officer at the moment of the seizure or the search [would] 'warrant a [person] of reasonable caution in the belief' that the action taken was appropriate." *Id.* at 21, 88 S.Ct. at 1880, 20 L.Ed.2d at 906, quoting in part from *Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543, 555 (1925).

The ultimate holding in *Terry* was articulated thusly:

"[W]here a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous ... and where nothing in the initial stages of the

encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him. Such a search is reasonable under the Fourth Amendment...."

Because the search at issue in *Terry* involved only a pat-down of the suspects' outer clothing, the Court addressed only that situation, leaving open whether, in the absence of probable cause, a protective search for weapons could extend beyond the person. That issue was resolved in *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). To some extent as here, police officers on patrol late at night in a rural area observed a car being driven erratically. When the car swerved off the road into a shallow ditch and came to a halt, they stopped to investigate. The occupant, Long, exited the car, leaving the driver's door open, and met the officers at the rear of the car. When asked for a second time to produce his vehicle registration card, Long turned and walked toward the open door of his car. The officers followed and, upon noticing a large hunting knife on the floorboard, stopped him and subjected him to a *Terry*-type pat-down, which revealed no weapon.

One of the officers then shined his flashlight into the interior of the vehicle and observed something protruding from under the armrest. He reached in, lifted the armrest, and noticed an open pouch, inside of which he saw a substance that he correctly believed to be marijuana. Long was then arrested. A search conducted incident to the arrest revealed a sizeable stash of marijuana in the trunk. The issue before the Court was whether *Terry*—a protective search for weapons absent probable cause—extended to the search of the interior of the car, and the Court held that it did.

The Court observed that in *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) and *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), it had already extended *Terry* to investigative detentions involving suspects in vehicles, holding in *Mimms* that, during

a traffic stop, the police could order persons out of the car and, upon a reasonable belief that they are armed and dangerous, frisk them for weapons, and in *Adams* that, acting on an informant's tip, they could reach into the passenger compartment and remove a gun from a driver's waistband, even when the gun was not visible from outside the car. Those cases recognized, and the Court again confirmed, that "roadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect," and thus the Court concluded that:

> "These principles compel our conclusion that the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officers in believing that the suspect is dangerous and the suspect may gain control of weapons."

*Michigan v. Long*, 463 U.S. at 1049, 103 S.Ct. at 3481, 77 L.Ed.2d at 1220.

*Michigan v. Long* is a *Terry* case; it represents an extension of *Terry* to areas and things in the interior of an automobile, but it does not enlarge, or lessen the standards for determining, what is permissible under *Terry*. The Court cited *Terry* throughout its opinion, and its ultimate conclusion was that:

> "If, while conducting a legitimate *Terry* search of the interior of the automobile, the officer should, as here, discover contraband other than weapons, he clearly cannot be required to ignore the contraband, and the Fourth Amendment does not require its suppression in such circumstances."

*Id.* at 1050, 103 S.Ct. at 3481, 77 L.Ed.2d at 1220.

### Reasonable Articulable Suspicion

■ McDowell acknowledges that the traffic stop was lawful and that Trooper Gussoni had the authority under *Mary-*

*land v. Wilson,* 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997) to order him to exit the truck. He claims, however, that the trooper had no reasonable articulable basis for believing that he might be armed and dangerous. He views Gussoni's decision to remove him and the gym bag from the car as based solely on the fact that McDowell and Hines appeared nervous and Gussoni's observation of McDowell bending and twisting in the car, reaching into the bag, claiming that he was looking for cigarettes, and then acknowledging that there were none in the bag. Nervousness alone, he argues, does not suggest criminal activity. *See Ferris v. State,* 355 Md. 356, 389, 735 A.2d 491, 509 (1999). The rest of the activity that was of concern to Gussoni, he dismisses as doing "nothing to advance the theory that Mr. McDowell may have been armed or concealing a weapon in the bag."

■■■ In determining the existence of reasonable suspicion, a court must consider "the totality of the circumstances—the whole picture." *United States v. Sokolow,* 490 U.S. 1, 8, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989), quoting from *United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 694–95, 66 L.Ed.2d 621, 629 (1981); *also Stokes v. State,* 362 Md. 407, 416, 765 A.2d 612, 615 (2001), quoting from *Graham v. State,* 325 Md. 398, 408, 601 A.2d 131, 136 (1992). We do not parse an officer's overall concern and base a judgment on whether its individual components, standing alone, will suffice. *Ransome v. State,* 373 Md. 99, 104, 816 A.2d 901, 904 (2003), citing *United States v. Arvizu,* 534 U.S. 266, 274, 122 S.Ct. 744, 751, 151 L.Ed.2d 740, 750 (2002). Conduct, including nervousness, that may be innocent if viewed separately can, when considered in conjunction with other conduct or circumstances, warrant further investigation. *Sokolow, supra,* 490 U.S. at 10, 109 S.Ct. at 1587, 104 L.Ed.2d at 12; *Illinois v. Wardlow,* 528 U.S. 119 at 124, 120 S.Ct. at 673, 676, 145 L.Ed.2d at 570, 576 (2000).

Trooper Gussoni was facing the following composite situation. He was alone. He had stopped a pickup truck containing two men late at night in a rural area. The two men both

appeared to be nervous, and McDowell, in particular, not only had no identification but appeared to "be out of it." Gussoni had no immediate backup. When, while waiting in his patrol car for an answer to his license, registration, and warrant check, he saw McDowell contorting in what appeared to him to be an unusual and suspicious manner, consistent with reaching for a weapon, he approached the truck and actually saw what McDowell was doing—reaching into a gym bag behind the seat. When he asked what McDowell was looking for, he got an improbable, inconsistent answer; McDowell could not be looking for a cigarette when he acknowledged that there were no cigarettes in the bag. So, what was he looking for? The gym bag was large enough to contain a weapon.

This composite was not the product of judicial speculation; it was articulated by Trooper Gussoni, and it suffices to justify an examination of the bag sufficient to confirm or allay Gussoni's suspicion. *See Matoumba v. State,* 162 Md.App. 39, 873 A.2d 386 (2005), *aff'd,* 390 Md. 544, 890 A.2d 288 (2006).

### Requiring That The Bag Be Opened

██ Having concluded that Trooper Gussoni was justified in examining the gym bag to determine whether it contained a weapon, we now must determine whether the method he used to make that determination was, under the circumstances, a permissible one—whether he was authorized to open the bag, or demand that McDowell do so, so that he could view its contents, without articulating why a pat-down of the bag would not have sufficed to achieve his purpose.

So far as we can tell, this issue has arisen before in only two reported cases, both in the Federal system. In *United States v. Vaughan,* 718 F.2d 332 (9th Cir.1983), the police stopped a car containing three men. The car was stopped because there were arrest warrants outstanding for two of the men. When the car was stopped, the third man, Vaughan, exited the vehicle carrying a soft vinyl briefcase and started to walk away. The police had no idea who Vaughan was and had no reason to suspect that he was or had been engaged in any criminal activity. Nonetheless, they brought him back, took

the briefcase, and handcuffed him, all of which the court found permissible under *Michigan v. Summers,* 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981). An officer then opened the briefcase and found in it some documents that were later referenced in an affidavit to support a search warrant for a hard cover briefcase and a suitcase also found in the car. The issue was the validity of the warrant, which hinged on the validity of the search of Vaughan's vinyl briefcase. Although the court agreed that the police had the right to detain Vaughan and frisk him for weapons, it held that they had no right to open the vinyl brief case: "The briefcase was soft and thin. Any weapons could have been felt through the cover. Thus, the officers had no reason to open it to protect their safety." *Id.* at 335.

In *United States v. Shranklen,* 315 F.3d 959 (8th Cir.2003), the court held that a pat-down was not a necessary precursor under *Terry* before opening and searching a pouch found in a vehicle properly stopped for a traffic violation. After initiating the stop, which, as here, was at night, the officer brought the driver, Shranklen, to his patrol car and issued a summons for driving on a suspended license. The officer then returned to the car and demanded that the passenger, Fleming, exit. As he did, the officer noted that Fleming was carrying a flashlight which, at the officer's insistence, Fleming handed to him. Fleming then asked if he could return to the car to retrieve a pouch that was under the front seat. The officer denied permission and, instead, patted Fleming down for weapons, placed him in the patrol car, and retrieved the pouch himself, which he proceeded to open.

Reversing a suppression of the pouch's contents, the court held that the search was reasonable under *Terry.* That conclusion was based on the facts that the pouch was large enough to contain a weapon and that Fleming requested to retrieve it from a place where it was concealed without any explanation as to why he needed it. Those circumstances, coupled with the facts that Fleming had a flashlight and Shranklen was driving on a suspended license, allowed the officer, in the court's view, to infer that Shranklen and Flem-

ing may have stolen the car and may have weapons in it. Turning then to whether a pat-down of the pouch would have sufficed, the court postulated:

"Had the black pouch contained a weapon, there is no guarantee that merely feeling the pouch would have led [the officer] to discover the weapon. For example, some type of padding could have enveloped the weapon, or the weapon could have been a pocketknife with an unexposed blade. It was therefore reasonable for [the officer] to open the pouch in order to inspect for weapons with his sense of sight and not solely with his sense of touch."

*Id.* at 964. In reaching that conclusion, the *Shranklen* court did not cite, much less attempt to distinguish, the ruling of its sister court in *Vaughan.*

With the greatest respect for our Federal colleagues in the Eighth Circuit, we are not persuaded by their analysis, which seems to be based more on judicial speculation than actual evidence. What *Terry* allows are *"necessary* measures" to determine whether a person is carrying a weapon. As we have observed, because the search is solely a protective one and not one to discover evidence, "it must be confined in scope to an intrusion reasonably designed to discover guns, knives, or other hidden instruments for the assault of the police officer." *Terry,* 392 U.S. at 29, 88 S.Ct. at 1884, 20 L.Ed.2d at 911. In the search of a person, it ordinarily must be confined, at least initially, to a pat-down of the outer clothing. In *State v. Smith,* 345 Md. 460, 468, 693 A.2d 749, 753 (1997), we noted:

"The reasonableness of a *Terry* stop and frisk ... must be assessed on a case-by-case basis. In any event, the proper balance between the sometimes competing interests of the police officer and the individual requires that the police officer employ the least intrusive means of discovering and neutralizing any concealed weapons. While a pat-down of the outer surface of a suspect's clothing is typically the least intrusive method, a more intrusive frisk may be warranted in the appropriate circumstance."

 As both *Terry* and *Long* make clear, the validity of a protective search for weapons must be judged on a case-by-case basis. In all instances, however, the State has the burden of proving the reasonableness, and thus the legality, of a warrantless search. *Paulino v. State*, 399 Md. 341, 348, 924 A.2d 308, 312 (2007) and cases cited there. When the search is sought to be justified under *Terry*, therefore, the State has the burden of demonstrating that the officer did, indeed, use the least intrusive means likely to be effective in determining whether the suspect is armed and dangerous. Obviously, if a pat-down is attempted and proves inconclusive, the police may take the next step. If, by reason of a container's construction or other circumstance, a pat-down of it is impracticable or is not likely to reveal the desired information, the officer need not resort to it; futile gestures are not required. If, on the other hand, as in *Vaughan*, there is no articulated reason why a pat-down might not suffice, there is no need to open the container as a self-protective measure, and doing so in that circumstance would exceed what is permitted under *Terry*.

 When the container is subjected to a more intrusive search in lieu of a pat-down, the State can sustain its burden of proof that the search was reasonable either by having the officer explain why it was necessary to conduct that search or by demonstrating from the container itself that a pat-down would not have revealed the presence or absence of a weapon. It is not a difficult burden, only a necessary one. It derives from the requirement laid out in *Terry* itself that the officer "be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." *Terry*, 392 U.S. at 21, 88 S.Ct. at 1880, 20 L.Ed.2d at 906.

Here, Trooper Gussoni offered no explanation for why a pat-down would not have sufficed; nor was the bag itself produced for the court's inspection. It was described merely as "a standard gym bag, two and a half feet by a foot and a half." Unlike the *Shranklen* court, we shall not speculate as to whether a pat-down would have been effective on such a

record. The State had the burden of establishing that as a fact, and it failed to do so. The motion to suppress should have been granted.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE JUDGMENT OF THE CIRCUIT COURT FOR QUEEN ANNE'S COUNTY AND REMAND CASE TO THAT COURT FOR NEW TRIAL; COSTS IN THIS COURT AND IN COURT OF SPECIAL APPEALS TO BE PAID BY QUEEN ANNE'S COUNTY.

Judge ELDRIDGE joins in judgment only.

Dissenting Opinion by MURPHY, J.

I agree that if incriminating evidence is acquired by the search of a container being carried by the person who was the subject of a valid *Terry* frisk, "the State can sustain its burden of proof that the search was reasonable either by having the officer explain why it was necessary to conduct that search or by demonstrating from the container itself that a pat-down would not have revealed the presence or absence of a weapon." I would, however, affirm the judgment of conviction on the ground that Petitioner's trial counsel never argued to the Circuit Court that the evidence should be suppressed because the State failed to establish that a pat-down of the gym bag would have been a futile gesture.

The record shows that Petitioner's trial counsel presented the following argument to the suppression hearing court:

This is a search and seizure. This is ... where an officer decides to take a leap that he thinks there is a gun in a bag and I don't know why he's thinking there's a gun in the bag.... There isn't any logic or reasonableness to him thinking that there's a gun in the bag.

It's a total leap for him and what [he] had is when he was walking up there, he was going to search the bag. He was going to search Mr. McDowell. He was placing Mr. McDowell in custody.... That's an illegal arrest. When he

searched his bag, that was an illegal search. It was a total leap—it was not a pat down. It was not a *Terry* search based on a reasonable suspicion. It was a flatout search and seizure and arrest without probable cause.

Had the "failure to pat-down the bag" argument been presented to the suppression hearing court, that court could have exercised its discretion to allow the State to reopen its case in order to present evidence that a pat-down would not have revealed the presence or absence of a weapon. Because that argument was presented for the first time in the Court of Special Appeals, I would affirm the judgment of conviction.

I am persuaded that petitioner's "failure to pat-down the bag" argument actually presented a "new issue" raised for the first time on appeal, rather than an additional argument in support of a preserved appellate issue. It is clear, however, that both of Maryland's appellate courts have discretion to "consider claims of error which have not been presented and decided by the trial court." *Squire v. State,* 280 Md. 132, 134, 368 A.2d 1019, 1020 (1977). It was therefore appropriate for this Court to address the "failure to pat-down the bag" argument because (1) we did not agree with the analysis of that argument in the reported opinion of the Court of Special Appeals, and (2) a reported opinion of that Court "remains the law unless and until it is overruled[.]" *Deems v. W. Maryland Ry. Co.,* 247 Md. 95, 102, 231 A.2d 514, 518 (1967). The question is whether this Court can both (1) overrule a Court of Special Appeals' opinion that addressed an "unpreserved" issue,[1] and (2) affirm the judgment of the Circuit Court on the ground of non-preservation? In my opinion, the answer to this question is, "yes."

---

1. The case at bar does not appear to be one in which the Court of Special Appeals exercised its discretion to address an unpreserved issue because (1) no such exercise of discretion is discussed in that Court's opinion, and (2) neither in its briefs nor in its response to the *cert.* petition has the State ever argued that the "failure to pat-down the bag" argument was not preserved for appellate review.

In *Crown Oil v. Glen,* 320 Md. 546, 578 A.2d 1184 (1990), after concluding that a "theory [that was not argued] until the case was briefed for the Court of Special Appeals ... does not present a new issue, but it is an additional argument for [the relief requested in the Circuit Court,]" this Court stated:

> Even if the ... argument were a new issue, raised for the first time on appeal, this Court has discretion under Rule 8–131(a) to consider it, and we exercise that ·discretion to consider the "issue" in this case.

* * *

> Nor is any exercise of discretion on this Court's part negated by the determination of the Court of Special Appeals that it would not consider the "issue," even though expressly urged to do so. This Court may exercise discretion independently under those circumstances. We need not first conclude that there was an abuse of discretion by the Court of Special Appeals.

*Id.* at 561–62, 578 A.2d at 1191. In my opinion, because "[t]his Court may exercise discretion independently," our decision to overrule the Court of Special Appeals' opinion as to the merits of petitioner's "failure to pat-down the bag" argument does not preclude us from exercising our discretion to nonetheless affirm the judgment of the Circuit Court on the ground that this argument was not preserved for appellate review.