**HEADNOTE:**

*Patrick A. Goodwin v. State of Maryland*, No. 2436, September Term 2016.

REASONABLE SUSPICION; PROTECTIVE SEARCH; AUTOMOBILE; FLOOR MAT

The Supreme Court in *Michigan v. Long,* 463 U.S. 1032, 1049 (1983), held that the police may conduct a protective search of "the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden," if the police possess a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons."

The police had reasonable, articulable suspicion that appellant was armed and dangerous when they initially saw appellant in a high crime area, engaging in activity suggesting a drug transaction, and when they stopped his vehicle, he acted suspiciously and displayed furtive movements.

The search did not exceed the permissible scope of a protective search to ensure officer safety. When the police have reasonable, articulable suspicion that a weapon may be found on the floor of a vehicle, a protective search to ensure that no weapon is hidden there may include lifting the floor mat.

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2436

September Term, 2016

_____

PATRICK A. GOODWIN

v.

STATE OF MARYLAND

_____

Meredith,
Graeff,
Arthur,

JJ.

_____

Opinion by Graeff, J.

_____

Filed:  December 21, 2017

Patrick Alan Goodwin, appellant, was convicted in the Circuit Court for Frederick County, pursuant to an agreed statement of facts, of one count of possession of a controlled dangerous substance. The court imposed a sentence of four years, all suspended, with three years of supervised probation.

On appeal, appellant presents two questions for this Court's review,[1] which we have consolidated as follows:

> Did the circuit court err in denying appellant's motion to suppress because the stop and frisk of his vehicle and his person were unconstitutional?

For the reasons set forth below, we shall affirm the judgment of the circuit court.

---

[1] Appellant presents the following two questions:

I. Did the trial court err in denying Mr. Goodwin's motion to suppress because: (A) the warrantless search of Mr. Goodwin's vehicle was not supported by reasonable articulable suspicion that he was armed and dangerous, where the only alleged furtive movements were slowly stopping the vehicle and momentarily disappearing from view while pulling over or (B) the act of lifting the vehicle's floor mat to search for weapons, when there was no evidence that a weapon appeared to be hidden under the floor mat or that a pat-down of the floor mat would have been futile, exceeded the permissible scope of a *Terry* vehicle frisk?

II. Did the trial court err in denying Mr. Goodwin's motion to suppress because: (A) the State failed to show the constitutionality of the stop of Mr. Goodwin by failing to produce the alleged arrest warrant, which was the sole basis for the stop or (B) the State failed to show a legal basis for continuing to detain Mr. Goodwin after executing the purpose of the stop – arresting Mr. Goodwin's passenger?

## FACTUAL AND PROCEDURAL BACKGROUND[2]

At approximately 10:00 p.m. on June 24, 2016, Officers Paul Malatesta and Kyle Jones, members of the Frederick City Police Department, were on assignment as part of the "street crimes unit," which focuses on "high crime areas, drug activity and gang activity." They were conducting surveillance of the Windsor Gardens Apartments, an area well-known by law enforcement for the sale and use of drugs, as well as gang-related activity.

The officers observed appellant parked in a vehicle outside the apartments. Another individual, later identified as Craig Walker, walked back and forth from the vehicle to one of the buildings in the complex multiple times. The officers did not observe any direct "hand-to-hand" exchange of drugs, but Officer Malatesta testified that Mr. Walker's actions gave them the impression that he was the "middleman" in brokering a drug deal. After Mr. Walker entered appellant's vehicle, and they left the complex, the officers followed the vehicle in their marked patrol car. They recognized Mr. Walker, who was seated in the front passenger seat, as someone on the department's outstanding warrant list. The officers confirmed with dispatch that Mr. Walker had an outstanding "contempt-of-court warrant for failing to appear for fingerprinting related to a criminal case," and they decided to initiate a traffic stop to apprehend Mr. Walker.

---

[2] Because the only issue presented is the propriety of the ruling on the motion to suppress, our discussion of the facts is limited to the facts presented during the suppression hearing. *See Sizer v. State,* __ Md. __, No. 1, Sept. Term, 2017, slip op. at 9 (filed Nov. 28, 2017) (We review a denial of motion to suppress evidence based "only [on] the facts generated by the record of the suppression hearing.").

Both officers testified that appellant had not violated any traffic laws or committed any infractions warranting a traffic stop. Officer Malatesta testified that they had no justification for stopping the car other than to effectuate the arrest of Mr. Walker.

After the police activated the patrol car's emergency lights, appellant proceeded to slow the car, but he did not immediately stop or pull the car over for about "3 to 400 yards." Once the car stopped, it then proceeded "to roll a little bit further," giving the appearance, based on Officer Malatesta's experience, that appellant was "attempting to buy time." The street was lit by streetlight, and there was "not much traffic," so appellant could have pulled the vehicle over safely.

As appellant pulled the car over, both officers noticed him bend down near the floorboard toward the inside of the vehicle, completely disappearing from the officers' view for several seconds before coming back into view. Officer Jones testified that, based on his experience, "[g]enerally, you don't see someone on a routine stop duck out of view as if they're either retrieving something or concealing something."

Officers Malatesta and Jones approached the vehicle, and they asked appellant to exit and stand near the rear of the vehicle. Additional officers arrived on the scene to assist and effectuate the arrest of Mr. Walker for the warrant.

Based on appellant's furtive movements, the officers suspected that weapons could be in the vehicle. Officer Jones conducted a frisk of the "lunge-and-grab area" of the vehicle where appellant was seated, and the area toward which the officers saw him bend. He described the events as follows:

[Officer Jones]: Based on the movements of the driver, when Officer Malatesta and I made contact, Officer Malatesta asked the driver to step out of the vehicle, primarily for the concern that he was retrieving a weapon, and then while he was doing that, other officers arrived to deal with the passenger, Mr. Walker --

[The State]: Yes.

[Officer Jones]: -- then I conducted a Terry frisk of the actual vehicle in the reach-, lunge-and-grab area of the driver based on those movements.

[The State]: Is this happening kind of simultaneously, Officer Malatesta gets him out and you get right in to search the vehicle?

[Officer Jones]: Yeah. It's, it's all very, very quick.

***

[The State]: And you stated that you saw the [appellant] initially duck down towards the right of the car, to the floorboard. Can you please outline for the Court the exact area of the car that you frisked?

[Officer Jones]: The exact area was the seat, the driver's seat; the driver's door pocket; under the driver's seat; to the side of the driver's seat, on both sides; the cup holder/center area; and then under the floor mat, because that was as far down, as you can check.

On cross-examination, defense counsel asked Officer Jones: "Now, you were looking under the floor mat? … And that's a flat piece of rubber?" Officer Jones replied: "It's either rubber or carpet, typically − . . . in a car, yes." Officer Jones also noted that people sometimes have "hides" in the floor, i.e., a hole in the floorboard of the vehicle used to hide firearms. He further stated that he looked under the floor mat for a gun or any weapon, including one that did not "result in a bulge [] visible to the eye."

When Officer Jones lifted the vehicle's floor mat, he saw a single syringe, the size of one used to receive a shot.[3] There was residue on the syringe, which the officers believed was heroin. The police then placed appellant under arrest and conducted a search of the vehicle and appellant's person. From the vehicle, they recovered a spoon and straws, and from a wallet on appellant's person, they recovered two strips of Suboxone Film, which is a prescribed medicine used to treat opioid addiction.[4]

Appellant filed a motion to suppress, arguing that the stop and frisk were warrantless and presumed to be illegal. Specifically, counsel argued that the frisk of appellant's car was improper.

At the suppression hearing, Officers Malatesta and Jones testified regarding the events that occurred that evening, as discussed *supra*. When Officer Malatesta began to testify about the stop of the vehicle based on the warrant for Mr. Walker, defense counsel objected on the ground that counsel had "never seen a copy of the warrant." The court asked whether appellant's counsel specifically requested the document, to which counsel replied: "It's a general discovery demand. I think it's fairly standard to produce the warrant that's the basis for a stop. I think it's required under what is, Your Honor, I think it was *Duggins v. State*."[5] The court overruled the objection. The State did not produce a copy

---

[3] The parties referred to the item under the floor mat as a needle or syringe. For purposes of this opinion, we will refer to it as a syringe.

[4] Suboxone film is a prescription medicine used to treat opioid dependence. SUBOXONE, https://perma.cc/F2A9-34NR (last visited Nov. 30, 2017).

[5] *Duggins v. State*, 7 Md. App. 486 (1969).

of the warrant at the suppression hearing, nor did appellant challenge the authenticity of the warrant.

At the conclusion of the testimony, defense counsel argued that the warrantless stop, arrest, and search violated the Fourth Amendment. He asserted that there may have been justification for the stop, but that was questionable without the warrant. He argued that, once the situation with Mr. Walker was "resolved," there was no reason for any interaction with appellant. Moreover, counsel asserted, the search of the vehicle was not a frisk, but rather, it was "literally picking up the floorboards to see if there's potentially hidden compartments that we have no reason to, to think exist." Counsel asked the court to suppress "each and every one of the things recovered – the needle that's originally recovered and then, also, the straw, spoon, [and] the Suboxone that were recovered after a more in-depth search."

The State argued that the police saw appellant in a high crime area engaging in suspicious activity that, in light of their experience and training, indicated involvement in a drug transaction. The police officers followed the vehicle and decided to stop it to arrest the passenger, who had an open warrant. Appellant then engaged in evasive, furtive movements. The State argued that, under these circumstances, the police had reasonable suspicion to conduct a protective frisk of the area where appellant was reaching down.

The circuit court ultimately denied appellant's motion to suppress. It noted that the police saw appellant at Windsor Gardens, a high-crime area, engaging in actions consistent with drug activity. The officers then saw Mr. Walker, who had an open warrant for a failure

to be fingerprinted.[6]  At that point, the police "knew they had an obligation to execute the warrant," and they stopped the vehicle.

The court then discussed appellant's furtive actions after the officers engaged the emergency lights on their vehicle.  It stated that the officers had reason to question appellant regarding what transpired at Windsor Gardens.  It noted: "Meantime, Mr. Walker was taken from the vehicle by other officers."

Turning to the frisk that ensued, the court noted that "the biggest concern for these officers was when they saw [appellant] do that reaching down to his right."  The court continued:

> What they saw that did cause them difficulty was when he leaned over and out of sight to his right, and certainly, we all know from whatever vehicle, some have consoles, some don't, but there's plenty of room to hide a weapon or at least move it out of sight, under a seat, next to a seat, in the console, on the floorboards, whatever.  That gave them sufficient reason to be concerned as to what, what might be there given that there had been – now, again, given that you put that together with the fact that there had been a transaction which was suspicious and that weapons are often used in connection with those transactions.

> So to be clear, they had to get [appellant] -- they got [appellant] out of the vehicle, which the Defense acknowledges was appropriate. Then they had a reason to examine that, briefly examine that vehicle, in terms of weapons, for what actions they observed of [appellant]; and, when Officer Jones did that, he found the syringe under the floor mat.

---

[6]  The court stated that, had the warrant been for appellant, it would have agreed with defense counsel "in terms of the requirement to turn it over, but given it was for the passenger [Mr. Walker], I overrule your objection as far as the [State] not providing it." The court's comments indicate that it construed defense counsel's objection regarding the failure to produce the warrant as a discovery issue, not as a basis to challenge the constitutionality of the stop.

Now, what I note was - - and up to this point, I certainly, I'm not even, have not had any difficulty with this at all -- I noted that he examined a limited area. It was just that area I described, whether it be a console, I think he mentioned cup holders, sides of the seats, the seat itself, and the floorboards, . . . his examination wouldn't necessarily be limited to a firearm, a handgun. It could be a knife, and it's dark. Although he has a flashlight – and, frankly, I'm familiar with the area -- there are some streetlights. I don't think it was inappropriate for him to lift the floor mat in terms of a thorough search.

When it's all taken together, given the context of the observations made at Windsor Gardens, the actions of [appellant] and the procedure of the stop, I think that it was appropriately done and I'll deny the motion to suppress.

## DISCUSSION

Appellant contends that the circuit court erred in denying his motion to suppress because his encounter with the police violated his Fourth Amendment rights in several ways. First, he argues that the warrantless stop was unconstitutional because (a) the State "failed to produce the alleged warrant for Mr. Walker," and (b) it "failed to provide a legal basis for [his] continued detention following Mr. Walker's arrest." Second, he alleges that the alleged *Terry* frisk of the vehicle was unconstitutional because (a) the police did not have reasonable suspicion to believe that he was armed and dangerous, and (b) the search of the floor mat exceeded the scope of a proper the frisk.

Before addressing the specific contentions, we note the framework in which we review these contentions. In *Bowling v. State*, 227 Md. App. 460, 466-67 (quoting *Taylor v. State*, 224 Md. App. 476, 486-87 (2015)), *cert. denied*, 448 Md. 724 (2016), this Court set forth the proper standard of review of a motion to suppress:

We review a denial of a motion to suppress evidence seized pursuant to a warrantless search based on the record of the suppression hearing, not the subsequent trial. *State v. Nieves*, 383 Md. 573, 581, 861 A.2d 62 (2004). We consider the evidence in the light most favorable to the prevailing party, here, the State. *Gorman v. State*, 168 Md. App. 412, 421, 897 A.2d 242 (2006) (Quotation omitted). We also "accept the suppression court's first-level factual findings unless clearly erroneous, and give due regard to the court's opportunity to assess the credibility of witnesses." *Id*. "We exercise plenary review of the suppression court's conclusions of law," and "make our own constitutional appraisal as to whether an action taken was proper, by reviewing the law and applying it to the facts of the case." *Id*.

We noted in *Bowling* that, when reviewing a claim that a police encounter violates the Fourth Amendment, we must keep in mind that "'the underlying command of the Fourth Amendment is always that searches and seizures be reasonable,'" and "'what is reasonable depends on the context within which a search takes place.'" *Id*. at 467 (quoting *State v. Alexander*, 124 Md. App. 258, 265 (1998)) (emphasis omitted). With those principles in mind, we address appellant's contentions.

## I.

## The Initial Stop

## A.

## Failure to Produce the Arrest Warrant

Appellant contends that the State failed to show a constitutional basis for the initial stop because it failed to produce the arrest warrant related to Mr. Walker. He asserts that "the State effectively asked the trial court to assume a valid arrest warrant existed without proving it," and therefore, "the State cannot meet its burden in this way."

-9-

The State contends that it was not required to produce the warrant to establish the legality of the traffic stop. It asserts that, because appellant did not challenge the validity of the arrest warrant as a basis for its motion to suppress, the State had no obligation to produce the warrant. In any event, the State asserts that the officers had a good faith belief that an open warrant existed for Mr. Walker, and therefore, the good faith exception to the exclusionary rule applies.

After reviewing the arguments of counsel below, we conclude that this issue is not preserved for review because it was not adequately presented to the circuit court. *See Fitzgerald v. State*, 384 Md. 484, 504-06 (2004) (argument not raised at suppression hearing not properly before appellate court). *Accord Harmony v. State*, 88 Md. App. 306, 317 (to preserve an issue for review, "[a] party must bring his argument to the attention of the trial court with enough particularity that the court is aware first, that there is an issue before it, and secondly, what the parameters of the issue are.").

In discussing the police encounter here, defense counsel's reference to the stop was as follows:

> There may have been a justification for stopping. I maintain, Your Honor, that under Duggins that without a copy of the, of the warrant - - that even that is questionable, whether they actually had a justification to stop. We don't know. The best evidence would have been the actual copy of the warrant - - but even if we're going to say that they were allowed to stop the car, they were allowed to stop the car and they were allowed to get Mr. Walker out, certainly -- he had an arrest warrant – then they were to let [appellant] go.

This argument hinted at the argument made on appeal, i.e., that the stop itself was unconstitutional because the police did not produce the warrant for Mr. Walker, but it did

not clearly state that argument. *See Sifrit v. State*, 383 Md. 116, 136 (2004) (declining to require "trial courts to imagine all reasonable offshoots of the argument actually presented before them before making a ruling."). Accordingly, this issue is not preserved for appellate review, and we decline to address it.[7]

**B.**

**Prolonged Detention**

Appellant next contends that, even if the initial stop was lawful, his continued detention after Mr. Walker was arrested was unconstitutional because the reason for the initial traffic stop "evaporated." He asserts that the reasonableness of a stop is based on its purpose, and once the officers arrested Mr. Walker, the purpose of the stop was fulfilled, and any further actions by the officers constituted a "second stop" requiring a separate justification, which the State failed to show.

The State contends that this contention is not preserved for this Court's review because appellant failed to argue below, as he does on appeal, that the stop "evolved into an unconstitutional detention" after Mr. Walker was arrested. In any event, the State argues that the contention fails on the merits because there was only a single continuous stop. It

---

[7] We do note that, in *Duggins v. State*, 7 Md. App. 486, 490 (1969), upon which appellant relies, this Court held that, where the State relied on an arrest warrant to justify an arrest, and the defendant argued that it may not have been completed, and therefore, was legally defective, the court could not determine the legality of the arrest based solely on the testimony of the officers. That is a completely different situation from that involved here, where the police had information, from police sources, that an arrest warrant existed for a person traveling in the car. Appellant cites no case holding that, under this circumstance, the police must produce the warrant for the court to find that the stop was constitutional.

-11-

further asserts that the frisk of the car and appellant occurred simultaneously to the arrest of Mr. Walker, and therefore, they in "no way prolonged the stop."

We begin with the State's preservation argument. Although defense counsel below did not articulate the argument exactly the same way as appellant does on appeal, he did argue that, once Mr. Walker was arrested there was "no reason for [the police] to keep interacting with" appellant. Under that circumstance, we conclude that he sufficiently preserved the issue for this Court's review, and we will address it on the merits.

Appellant is correct in his assertion that once the purpose of a valid stop has been fulfilled, a continuation of the encounter that "implicates the Fourth Amendment is constitutionally permissible only if either (1) the driver consents to the continuing intrusion or (2) the officer has, at a minimum, a reasonable, articulable suspicion that criminal activity is afoot." *Ferris v. State*, 355 Md. 356, 372 (1999). Where appellant goes astray, however, is in his assertion that there was a second stop in this case.

Here, the record indicates that the arrest of Mr. Walker occurred at the same time as the frisk of the vehicle. Officer Malatesta testified that he took appellant to the rear or the side of the vehicle so that Officer Jones could do "the quick pat-down of the vehicle," and at the "same time," the "other officers were arriving and taking Mr. Walker out to arrest him." He explained that by the time the arrest of Mr. Walker was completed, they had found the syringe in the vehicle. Similarly, Officer Jones testified that Officer Malatesta's actions in asking appellant to step out of the vehicle happened "kind of simultaneously"

with his search of the vehicle, and during that time, "other officers arrived and were dealing with the passenger, Mr. Walker."

Accordingly, the record does not support appellant's argument that there was a second stop after the purpose of the stop, Mr. Walker's arrest, was completed. Rather, the record indicates that the search of the vehicle occurred simultaneously with Mr. Walker's arrest.[8] We thus turn to the validity of the frisk of the vehicle.

## II.

### *Terry* Frisk

Appellant contends that the search of the vehicle was unconstitutional for two reasons. First, he argues that the police did not have reasonable, articulable suspicion that he was armed and dangerous. Second, he asserts that the search exceeded the scope of a permissible *Terry* frisk. As explained below, we are not persuaded.

### A.

#### Suspicion Armed and Dangerous

The Court of Appeals recently discussed the Fourth Amendment guarantee against unreasonable searches and seizures, noting that what makes a search or seizure reasonable "'depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers.'" *Sellman v. State*, 449 Md. 526,

---

[8] The circuit court did not directly address this argument, most likely because of the lack of specificity with which it was made. It did appear to credit the officer's testimony regarding the timing of events, however, noting that the officers got out of their vehicle to resolve the issue with appellant, and "[m]eantime, Mr. Walker was taken from the vehicle by other officers."

-13-

540 (2016) (quoting *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977)). The general rule is that "'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions.'" *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). *Accord Barrett v. State,* __ Md. App. __, No. 530, Sept. Term, 2016, slip op. at 5-6 (filed Nov. 29, 2017). The exception relied upon here is reasonable suspicion to conduct a protective frisk.

In *Terry v. Ohio*, 392 U.S. 1, 27 (1968), the United States Supreme Court held that, when the police are investigating a person at close range, they are permitted to conduct a frisk of the person upon reasonable suspicion that the person is armed and dangerous. Noting that it would be "unreasonable to require that police officers take unnecessary risks in the performance of their duties," *id.* at 23, the Court held that a police officer could conduct

> a reasonable search for weapons for the protection of the police officer, where he has a reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonable prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.

*Id.* at 27. Such a search, however, must be "reasonably related in scope to the justification for [its] initiation," and therefore, it must be "confined in scope" to a search likely to determine the existence of weapons. *Id*. at 29.

In *Michigan v. Long*, 463 U.S. 1032, 1047 (1983), the Supreme Court extended this ruling to vehicles, noting that "investigative detentions involving suspects in vehicles are especially fraught with danger to police officers." The Court noted several dangerous scenarios, i.e., the person being investigated could break away from the police and retrieve a weapon from his automobile, or if the person is not arrested and permitted to reenter the vehicle, he or she will then have access to weapons in the vehicle. *Id*. at 1051-52. The Court held that, when the police stop a person in a vehicle, a protective search of

> the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.

*Id*. at 1049 (quoting *Terry,* 392 U.S. at 21).

The Court of Appeals recently discussed the nature of the reasonable suspicion requirement to justify a frisk, stating as follows:

> When reviewing whether reasonable suspicion exists, "[t]he test is the 'totality of the circumstances,' viewed through the eyes of a reasonable, prudent, police officer." The test is objective: "the validity of the stop or the frisk is not determined by the subjective or articulated reasons of the officer; rather, the validity of the stop or frisk is determined by whether the record discloses articulable objective facts to support the stop or frisk." Reasonable suspicion requires an officer to have "specific and articulable facts which, taken together with rational inferences from the facts, reasonably warrant intrusion." In other words, "[t]he officer has reason to believe that an individual is armed and dangerous if a reasonably prudent person, under the circumstances, would have felt that he was in danger, based on reasonable inferences from particularized facts in light of the officer's experience."

*Sellman*, 449 Md. at 542 (internal quotations omitted).

The Court further explained that, in looking at the totality of the circumstances,

> the court . . . must not parse out each individual circumstance for separate consideration. In making its assessment, the court should give due deference to the training and experience of the law enforcement officer who engaged the stop at issue. Such deference allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person. To be sure, [a] factor that, by itself, may be entirely neutral and innocent, can, when viewed in combination with other circumstances, raise a legitimate suspicion in the mind of an experienced officer.

*Id*. at 543 (quoting *Crosby v. State,* 408 Md. 490, 507-08 (2009)). *Accord Norman v. State*, 452 Md. 373, 387, *cert. denied*, 138 S. Ct. 174 (2017).

Appellant contends that the police here did not have reasonable suspicion that he was armed and dangerous, arguing that he "was in the wrong place at the wrong time by unwittingly giving a ride to a passenger with an alleged outstanding arrest warrant for failure to complete court-ordered fingerprinting." He notes that, although the officers suspected that he had been involved in a drug transaction, they stated that they did not have reasonable suspicion to stop him based on their observations at Windsor Gardens apartments, and he argues that a generalized connection between drugs and guns does not amount to reasonable suspicion that a person is armed and dangerous to justify a *Terry* frisk.

In determining whether Officers Malatesta and Jones had reasonable, articulable suspicion that appellant was armed and dangerous, supporting a frisk of the vehicle, we must view the totality of the circumstances. In this regard, it is significant that the appellant came to the attention of the police while they were conducting surveillance of the Windsor

Gardens apartments, a high-crime area known for drugs and drug-related crime. Appellant's conduct, sitting in his vehicle while another individual, Mr. Walker, traversed back and forth between appellant's vehicle and one of the apartment buildings, indicated to the officers, based on their experience, that drug activity was occurring. Although the observations at Windsor Gardens were not the basis for the stop, and although a drug transaction by itself may not automatically provide reasonable suspicion that the person is armed, *see Norman* 452 Md. at 412, it is a factor that the police may consider. *See Bost v. State*, 406 Md. 341, 360 (2008) ("[g]uns often accompany drugs."); *Dashiell v. State*, 374 Md. 85, 101 n.4 (2003) (although not determinative, evidence of drug trafficking "'may be a factor in a totality determination of whether the officers possessed the requisite reasonable suspicion to fear for their safety.'"). Officer Jones testified that the suspicion of drug activity, as well as the knowledge that weapons are routinely associated with drug activity, were factors leading to the protective search of the vehicle for a weapon.

When the officers activated their emergency lights to stop the vehicle, based on Mr. Walker's open arrest warrant, appellant acted suspiciously. He did not immediately stop the vehicle, and when he did, the car continued to roll, giving the officers the impression that appellant was "attempting to buy time." Moreover, as the vehicle stopped, appellant bent toward the floor area of the car, disappearing from the officers' view, which caused the officers to be concerned that appellant was reaching for or concealing a weapon. These furtive movements supported the officers' suspicion that appellant was armed and dangerous. *See United States v. Nash*, 876 F.2d 1359, 1360-61 (1989) (suspect's "furtive

-17-

gesture," including "reaching toward floor," suggested that suspect was hiding a gun and supported a limited search of the vehicle, including lifting the jacket "tucked under defendant's lap and stretched out to the floor of the front seat."), *cert. denied*, 493 U.S. 1084 (1990); *State v. Dilyerd*, 467 So.2d 301, 304-05 (Fla. 1985) (reasonable to search passenger area after passenger made furtive movements by leaning toward floorboard). *See also State v. Flowers*, 734 N.W.2d 239, 252 n.13 (Minn. 2007) (suspect's furtive movement, and failure to immediately comply with attempt by police to stop him, gave officers reasonable suspicion to believe he was armed and dangerous).

The Court of Appeals' analysis in *Chase v. State*, 449 Md. 283 (2016), is instructive. In that case, the police observed Chase and a companion in a car in a "known high drug area," engaging in conduct that led the officers to believe drug activity was taking place. *Id*. at 290-91. As the officers approached, the driver and occupant of the vehicle engaged in furtive movements, including reaching under the seat. *Id*. at 292. The Court held that the police had reasonable suspicion that Chase was armed and dangerous based on the officers' observation of behavior "consistent with the hiding of illegal drugs as well as 'furtive' movements that suggested weapons could have been secreted in the vehicle." *Id*. at 307-08. The Court's conclusion in that case is consistent with our conclusion in this case.[9]

---

[9] The issue in *Chase* was whether the officers acted reasonably in asking Chase to exit the vehicle and handcuffing him while they investigated the situation. Because the issue revolved around whether the officers had reasonable suspicion to believe Chase was armed and dangerous, it is analogous to the issue presented here.

Appellant argues that the officers' suspicion of a drug transaction was insufficient to justify the frisk because "the suspicion that drugs may be present in the vehicle cannot alone give rise to a reasonable suspicion that the suspect may be armed and dangerous." In support appellant relies on *Norman*, in which the Court of Appeals held that the odor of marijuana emanating from a vehicle does not, by itself, provide reasonable suspicion that the occupants of the vehicle are armed and dangerous. 452 Md. at 412. The Court held that a frisk was proper only if, "in addition to the odor of marijuana, another circumstance or other circumstances are present giving rise to reasonable articulable suspicion that an occupant is armed and dangerous." *Id*. at 425. Significantly, the Court identified circumstances that could give rise to reasonable suspicion that a person was armed and dangerous, including that the person "made furtive movements . . . or otherwise behaved suspiciously." *Id*. at 426-27.

Here, the totality of the circumstances includes, not only evidence suggesting that appellant had been involved in a drug transaction, but also his furtive movements suggesting to the police that he was retrieving or concealing a weapon. Under these circumstances, there was reasonable suspicion to believe that appellant was armed and dangerous, and therefore, it was reasonable under the Fourth Amendment for the officers to conduct a protective frisk.

**B.**

**Scope of the *Terry* Frisk**

Appellant next contends that, even if the police had reasonable suspicion to conduct a *Terry* frisk of his vehicle, the search exceeded its permissible scope. He asserts that, pursuant to *Long*, 463 U.S at 1049, 1051, the police were only entitled to conduct a "limited" search for weapons, using the least intrusive means to determine if a weapon was in the vehicle, and therefore, the officers were permitted to conduct, "[a]t most, a cursory pat-down of the floor mat."

The State disagrees. It contends that, in light of appellant's "conduct in relation to the floor of his car," Officer Jones was entitled to lift the floor mat to determine whether appellant had secreted a weapon there.

As indicated, the rationale for allowing a protective frisk is that, when a police officer has reasonable suspicion that a person is armed and dangerous, it would "be clearly unreasonable to deny the officer the power to take the necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm." *Terry*, 392 U.S. at 24. The scope of a protective search of the passenger compartment of a vehicle, however, is "limited to those areas in which a weapon may be placed or hidden" and to areas where the suspect "may gain immediate control of the weapons." *Long*, 463 U.S. at 1049.

The reasonableness of a protective search for weapons must be assessed on a case-by-case basis. *McDowell v. State*, 407 Md. 327, 340 (2009) (quoting *State v. Smith*, 345

Md. 460, 468 (1997)). The permitted scope of a protective search, therefore, is "whatever is necessary to serve the purpose of that search," i.e., ensuring officer safety. *Ames v. State*, 231 Md. App. 662, 679 (2017).

Here, Officer Jones testified that he saw appellant duck down toward the floorboard. Thus, the area he searched included "the driver's seat; the driver's door pocket; under the driver's seat; to the side of the driver's seat, on both sides; the cup holder/center area; and then under the floor mat." According to Officer Jones, those areas were "within the lunge, reach, and grab" of appellant as he "ducked down" in the driver's seat.

This search did not exceed the scope of a reasonable protective search to ensure officer safety. As the Supreme Court has noted, an officer confronted with the situation which Officer Jones faced must make a "'quick decision as to how to protect himself and others from possible danger.'" *Long*, 463 U.S. at 1052 (quoting *Terry*, 392 U.S. at 28). *See also Graham v. Connor*, 490 U.S. 386, 396-97 (1989) ("[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving."). Where appellant made furtive movements and ducked down toward the floorboard, it was reasonable for Officer Jones to check that area of the vehicle, including lifting the floor mat by the driver's seat to determine if a weapon was hidden there. *See United States v. Paulino*, 850 F.2d 93 (2d Cir. 1988) (protective search, which included lifting rubber mat on floor of vehicle, was reasonable under the Fourth Amendment); *People v. Colyar*, 996

-21-

N.E.2d 575, 586-87 (Ill. 2013) (upholding protective search of passenger compartment of vehicle, which revealed handgun under floor mat).

We are not persuaded by appellant's argument that the decision of the Court of Appeals in *McDowell* requires a different conclusion. In that case, the police initiated a traffic stop and then observed McDowell reach underneath his seat and behind his seat into a gym bag. 407 Md. at 331. The officer ordered McDowell to exit the vehicle and to open the bag, which revealed drugs. *Id*. at 331-32.

The Court of Appeals held that, to show that a protective frisk of the bag was reasonable, the State had to show that the officer used the "least intrusive means" to determine if the suspect is armed and dangerous. *Id*. at 341.[10] The Court held that, if there was no showing that a pat-down of a container would not suffice to determine if it contained a weapon, opening the container exceeded the scope of a proper protective search. *Id*. The Court stated:

> When the container is subjected to a more intrusive search in lieu of a pat-down, the State can sustain its burden of proof that the search was reasonable either by having the officer explain why it was necessary to conduct that search or by demonstrating from the container itself that a pat-down would not have revealed the presence or absence of a weapon.

---

[10] We note that, in *City of Ontario v. Quon*, 560 U.S. 746, 763 (2010), the Supreme Court stated that it had "repeatedly refused to declare that only the 'least intrusive' search practicable can be reasonable under the Fourth Amendment." (quoting *Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 663 (1995)).

*Id.* Because the police officer in *McDowell* did not explain why a pat-down of the gym bag would not have been effective, the Court held that the drugs discovered should have been suppressed. *Id*. at 341-42.

*McDowell* does not control here because a floor mat is not a container. A container is defined as "a receptacle (as a box or jar) for holding goods." Merriam-Webster's Collegiate Dictionary 269 (11th ed. 2003). The gym bag in *McDowell* fell within this definition; the floor mat in this case does not.

We hold that when the police have reasonable, articulable suspicion that a weapon may be found on the floor of a vehicle, a protective search to ensure that no weapon is hidden there may include lifting the floor mat. The protective search here did not exceed its scope, and the circuit court properly denied the motion to suppress.

**JUDGMENT OF THE CIRCUIT COURT FOR FREDERICK COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**